## CITY OF SEATTLE v. PUGET SOUND POWER & LIGHT CO.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1926. Rehearing Denied December 13, 1926.)

No. 4875.

1. **Appeal and error** ⊜⇒1097(1), 1195(1)—Decision of appellate court is controlling on court below after case has been remanded, and on appellate court on second appeal.

Decision of appellate court is controlling on court below after case has been remanded, and on appellate court on second appeal or writ of error in same case, unless between the two decisions there has been change in law, which appellate court is bound to follow.

2. **Municipal corporations** ⊜⇒1021, 1022—Seller, with agreement that city buying street railway should pay taxes, held not required to present claim to council before claiming amount of such taxes.

Seller of street railway, with agreement that city buying it should pay certain taxes, *held* not required to present claim to city council, under charter provision requiring presentation of claim for damages before bringing action, before claiming amount of such taxes, which it had been required to pay.

3. **Limitation of actions** ⊜⇒46(6)—City, which in buying street railway agreed to pay certain taxes, must repudiate obligation before right of action accrues to seller.

Where city bought street railway and agreed to pay certain taxes, no right of action for such taxes accrued in favor of seller, so as to start statute of limitations, till city repudiated obligation.

4. **Equity** ⊜⇒87(1).

Statute of limitation is binding on federal court of equity by analogy only.

5. **Equity** ⊜⇒87(1).

Statute of limitation *held* not to bar suit in equity, where party had been asserting rights in courts with utmost diligence from time cause of action accrued.

6. **Judgment** ⊜⇒735—Judgment in suit for specific performance of contract for sale of street railway held not res judicata of subsequent action to enforce buyer's payment of taxes as part of agreed consideration.

Judgment in suit against city by seller of street railway for specific performance of contract of sale *held* not res judicata of subsequent action to enforce city's payment of certain taxes as part of agreed consideration, where city had not repudiated obligation to pay taxes at time of first suit.

7. **Street railroads** ⊜⇒13—Amount of judgment for seller of street railway against city, which acquired it through action of council, held not chargeable against general funds of city (Rev. Code Wash. 1915, § 8005).

Amount of judgment for seller of street railway against city, which acquired it through action of city council under second method prescribed in Rem. Code Wash. 1915, § 8005 et seq., for certain taxes which city agreed to pay as part of consideration, *held* not chargeable against general funds of city, since by such purchase no general indebtedness was incurred by it.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; George M. Bourquin, Judge.

Suit by the Puget Sound Power & Light Company against the City of Seattle. Decree for plaintiff, and defendant appeals. Modified and affirmed.

See, also, (D. C.) 300 F. 441, 443.

Thomas J. L. Kennedy, Corp. Counsel, and Geo. A. Meagher, Ray Dumett, and Charles L. Smith, Asst. Corp. Counsel, all of Seattle, Wash., for appellant.

James B. Howe and Edgar L. Crider, both of Seattle, Wash., for appellee.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

RUDKIN, Circuit Judge. This case was before this court on a former appeal, where a full statement of the facts will be found. Puget Sound Power & Light Co. v. City of Seattle, 5 F.(2d) 393. As will appear from a reference to that case, the court below dismissed the complaint for want of equity, or because the plaintiff had a full, speedy, and adequate remedy at law; but this court held that the complaint stated a cause of action in equity, entitling the plaintiff to certain equitable relief, assuming the facts stated in the complaint to be true, and the decree was accordingly reversed, and the cause remanded for further proceedings. In disposing of the case on the second trial the court below said:

"This suit is now a simple one. Protracted litigation involving the parties and subject-matter has settled and adjudicated all real and vital issues. In consequence this court has virtually naught to do but to render decree in conformity with and to enforce the adjudications aforesaid."

The court then ruled that certain defenses interposed by answer were disposed of by the decision on the former appeal, and that certain other defenses were obviously lacking in merit. A decree was thereupon entered in favor of the plaintiff, in accordance with the prayer of the complaint, and in accordance with the mandate of this court. From that decree the defendant has appealed.

There is no serious contention that the court below failed or refused to carry out the mandate of this court on the second trial, and, if the decision of this court on the former appeal is to be accepted as controlling on the present appeal, it only remains to consider certain affirmative defenses interposed and the form of the decree itself.

[1] The rule is firmly established that the decision of an appellate court on appeal or writ of error is controlling upon the court below after the case has been remanded, and is equally controlling upon the appellate court on a second appeal or writ of error in the same case. No doubt isolated cases may be found where appellate courts have disregarded the rule, and their power to do so is not questioned; but the overwhelming weight of authority is in its favor, unless between the two decisions there has been some change in the law, by legislative enactment or judicial decision, which the appellate court is bound to follow. The rule itself has been iterated and reiterated by the Supreme Court and by this court. Sibbald v. United States, 12 Pet. 488, 492, 9 L. Ed. 1167; Sizer v. Many, 16 How. 98, 14 L. Ed. 861; Roberts v. Cooper, 20 How. 467, 484, 15 L. Ed. 969; Tyler v. Magwire, 17 Wall. 253, 283, 21 L. Ed. 576; Supervisors v. Kennicott, 94 U. S. 498, 499, 24 L. Ed. 260; Clark v. Keith, 106 U. S. 464, 465, 1 S. Ct. 568, 27 L. Ed. 302; Chaffin v. Taylor, 116 U. S. 567, 572, 6 S. Ct. 518, 29 L. Ed. 727; In re Sanford Fork & Tool Co., 160 U. S. 247, 255, 256, 16 S. Ct. 291, 40 L. Ed. 414; Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 456, 18 S. Ct. 121, 42 L. Ed. 539; Illinois v. Illinois Central R. R. Co., 184 U. S. 77, 92, 22 S. Ct. 300, 46 L. Ed. 440; Bodkin v. Edwards (C. C. A.) 265 F. 621; Dunkley Co. v. Central California Canneries (C. C. A.) 7 F.(2d) 972, 974.

Cases almost without number might be cited from other jurisdictions to the same effect. On petition for rehearing on the former appeal and on petition for certiorari to the Supreme Court the present appellant earnestly insisted that this court went outside of the record and decided questions not properly before it, but the contention was manifestly unfounded. The court below decided that the complaint stated no cause of action in equity, and this court decided to the contrary. That was the only question before this court on the former appeal, and that question alone was determined. The Supreme Court refused to review that decision by certiorari (City of Seattle v. Puget Sound Power & Light Co., 269 U. S. 565, 46 S. Ct. 24, 70 L. Ed. ——), and we have neither the right nor the disposition to review it now.

[2] This brings us to such defenses as are not foreclosed by our former decision, and, like the court below, we find them lacking in merit. It is contended that the appellee failed to present a claim to the city council of the city of Seattle under a charter provision providing that no action shall be maintained against the city for any claim for damages unless such claim is first presented to the city council. Waiving the question whether the claim here involved is a claim for damages within the meaning of the charter provision, it is manifest that no such claim existed when the original suit was commenced. The taxes had not then been paid and the suit was brought to compel the city to pay its portion of the taxes and to restrain the taxing officers of the state from distraining or seizing other property of the appellee, upon which all taxes had been paid, until the street railway property upon which the taxes were a specific lien was first exhausted. The denial of a temporary injunction compelled the appellee to pay the taxes to prevent a sale of its other property, but this payment under compulsion did not work an abatement of the suit. The court still retained jurisdiction to do full and complete justice between the parties, and it was not required to dismiss the pending suit in order that the appellee might go through the formality of presenting a claim to the city council and commence over again.

[3-5] The plea of the statute of limitations is equally unfounded. No right of action accrued in favor of the appellee until the city repudiated its obligation to pay its portion of the taxes, and that repudiation occurred well within the statutory period. Furthermore the statute of limitations is binding on a federal court of equity by analogy only, and

it clearly appears from the record that the appellee·has been asserting its rights in the courts with the utmost diligence almost from the moment the cause of action accrued.

[6] Again, it is said that the claim for breach of the agreement to pay the taxes might have been litigated in City of Seattle v. Puget Sound Power & Light Co. (C. C. A.) 284 F. 659. It is perhaps a sufficient answer to this contention to say that it was not so litigated. At the time that suit was commenced, early in 1921, and long thereafter, the appellant was in the most solemn manner asserting its obligation to pay a portion of the taxes in litigation then pending in other courts. Puget Sound Power & Light Co. v. Seattle, 117 Wash. 351, 201 P. 449, 207 P. 689; Puget Sound Co. v. King County, 264 U. S. 22, 44 S. Ct. 261, 68 L. Ed. 541. The complaint in the case made no reference to the taxes° in question, or to the obligation to pay them. The answer declared that it was not the intention of the city to breach the contract, or fail to perform the same, by any act or thing set forth. by the plaintiff in its bill of complaint, or at all, and the suit itself was dismissed for want of equity. The plea of res› adjudicata was therefore devoid of merit.

[7] Other questions discussed in the briefs call for no comment aside from a question as to the modification of the decree. The decree is in form a general judgment against the city, and we think it is so in legal effect. It only remains to consider whether the appellant is entitled to such a decree. The laws of the state of Washington (Rem. Code, § 8005 et seq.) prescribe two methods by which a municipality in that state may acquire a street railway system or other public utility. The first method is where a general indebtedness is to be incurred, and the second where, in the charter of any city adopted by a vote of the people, an article or provision has been adopted authorizing the city council or other corporate authorities to provide by ordinance for acquiring and operating a public utility, for which no general indebtedness is to be incurred, or, in other words, where the cost of the utility and the expense of maintenance and operation is to be paid exclusively from a special fund created from the gross earnings or revenues of the utility. If the first method is employed, the system or plan proposed and the estimated cost thereof must be submitted to the qualified voters. If the second method is employed, the city council alone may act.

In the present case the second method was pursued, and it was only because of that fact

and because no general indebtedness was incurred by the city that the ordinance authorizing the purchase and the contract of purchase were sustained; or, in the language of the Supreme Court of the state: "We are satisfied the proposed plan and bonds will not create any indebtedness against the city and that the city council has. authority to consummate the purchase without the sanction of the qualified voters." Twichell v. Seattle, 106 Wash. 32, 52, 179 P. 127, 131.

Again, in Asia v. Seattle, 119 Wash. 674, 206 P. 366, suit was brought by certain taxpayers to enjoin the city from using general funds to defray the expense of operating the street railway system here in question, and in reversing a judgment refusing an injunction the Supreme Court said: "We are not now concerned with questions other than the one before us, and are not called upon to advise the city how, if at all, it may solve the very serious‹problem which has arisen from what has proven to be the erroneous judgment of its legislative body; but we are clear that only one construction can be placed upon the statute which governs this situation, and that is that when it is proposed that any general indebtedness be incurred for such a purpose as is here considered, the matter must be submitted to the voters; and if not so submitted, all obligations arising from the acquisition, operation and maintenance of the utility must be met from its revenue, and, in any event, by no action of the city or its officials can the burden be shifted to the shoulders of the taxpayers, who have had no opportunity to say whether they will or will not accept the hazard. The trial court should have granted the prayer of appellants and enjoined the city and its officials from in any manner encroaching upon the general fund or placing the burden in any degree upon the taxpayers."

Under the foregoing authorities it becomes at once apparent that the city council and other municipal officers were powerless to create any general indebtedness against the city by the contract of purchase. It is no answer to say that taxes are not debts, because the obligation of the city to pay a portion of the taxes rested in contract, and was not implied by law. Had the taxes been in existence at the time the contract of purchase was executed, we apprehend it will not be gainsaid that an agreement on the part of the city to pay a portion of the taxes as a part of the purchase price would be the incurring of an indebtedness within the meaning of the law, and the mere fact that the tax-

es were not levied until later did not change the nature of the transaction. The substance of the agreement was that the purchase price would be one amount if the transfer was consummated before the taxes for 1919 were levied, and a different amount if consummated afterwards. In either event the payment of the taxes was a part of the consideration for the transfer, and the fact that payment was to be made to the city or county instead of to the vendor is immaterial, inasmuch as the payment was to be made in discharge of an obligation of the vendor, not an obligation of the city.

For these reasons we are satisfied that the appellee was not entitled to a general decree against the city, payable from its general funds. Counsel for the appellee insists that the question will not arise until an attempt is made to collect from the general funds of the city; but this contention cannot be sustained. If the decree is a general one against the city, in form and in effect, its character cannot be changed by the court when called upon to enforce it. The decree will therefore be modified, so as to provide that the amount of the recovery shall in no event be chargeable against or collectible from the general funds of the city.

As thus modified, the decree is affirmed.