**GREAT WESTERN BROADCASTING CORPORATION, d/b/a KXTV, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 20106.**

United States Court of Appeals
Ninth Circuit.

Feb. 9, 1966.

Winthrop A. Johns, Reilly & Wells, Washington, D. C., for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Marcel Mallet-Prevost, Norton J. Come, Assts. Gen. Counsel, Michael N. Sohn, Atty., N. L. R. B., Washington, D. C., for respondent.

Douglas A. Anello, Gordon C. Coffman, Washington, D. C., for amicus curiae National Ass'n of Broadcasters.

Neyhart & Grodin, Duane B. Beeson, San Francisco, Cal., for amicus curiae American Federation of Television and Radio Artists, San Francisco Local, National Ass'n of Broadcast Employees and Technicians, Local 55.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge:

This unfair labor practice proceeding is now in this court for the second time. The proceeding was instituted by the National Labor Relations Board on the complaint of Great Western Broadcasting Corporation, d/b/a KXTV. The complainant operates a television station in Sacramento, California. KXTV was having a labor dispute with the American Federation of Television and Radio Artists, San Francisco Local, and the National Association of Broadcast Em-

ployees and Technicians, Local 55; and the complaint was filed against these unions.

The case involves an attempt by the two unions, assertedly using coercive methods, to force several companies to cease advertising on KXTV. In its complaint, the company charged that this union activity constituted an illegal secondary boycott as proscribed by section 8(b) (4) (ii) (B) of the National Labor Relations Act (Act), 61 Stat. 140 (1947), as amended, 29 U.S.C. § 158(b) (4) (ii) (B) (1964). The Board, with one member dissenting, dismissed the complaint, holding that the questioned union activity was protected by the so-called publicity proviso to section 8(b) (4) of the Act.[1] This Board decision and order are reported at 134 N.L.R.B. 1617.

On review we reversed, holding that the publicity proviso does not protect publicity of the kind utilized by the respondent unions. We remanded the proceedings to the Board for a determination, on the merits, of two additional questions which had to be decided in disposing of the company's complaint. These questions were: (1) did the unions' activity tend to "threaten, coerce, or restrain," within the meaning of section 8(b) (4) (ii) (B); and (2) is such union activity protected by the First Amendment of the Federal Constitution? Great Western Broadcasting Corporation v. N. L. R. B., 9 Cir., 310 F.2d 591, 600.

In the further agency proceedings following the remand, the Board found that all of the questioned union conduct, other than the mere request that neutrals not advertise on KXTV, constituted threats, coercion, or restraint within the meaning of section 8(b) (4) (ii) (B). However, and notwithstanding, the decision of this court reported in 310 F.2d 591, the Board again dismissed the complaint on the ground that the unions' conduct was protected under the publicity proviso to section 8(b) (4). The Board did so on the basis of its conclusion that, in N. L. R. B. v. Servette, Inc., 377 U.S. 46, 54-57, 84 S.Ct. 1098, 12 L.Ed.2d 121;[2] and N. L. R. B. v. Fruit & Vegetable Packers & Warehousemen, Local 760 (Tree Fruits), 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 decided after the remand, the Supreme Court had rejected this court's interpretation of the statute and had confirmed the Board's reading of the proviso.[3]

---

1.  Section 8(b) (4) provides in pertinent part:

    "(b) It shall be an unfair labor practice for a labor organization or its agents—

    *   *   *   *   *

    "(4) * * * (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where * * * an object thereof is—

    *   *   *   *   *

    "(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *.

    *   *   *   *   *

    "*Provided further*, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution; * * *."

2.  In *Servette*, the Supreme Court reversed the decision of this court rendered in Servette, Inc. v. N. L. R. B., 9 Cir., 310 F.2d 659. In its decision in *Servette*, this court relied upon certain conclusions stated in Great Western Broadcasting Corporation v. N. L. R. B., 9 Cir., 310 F. 2d 591, regarding the applicability of the publicity proviso.

3.  In view of its second dismissal of the complaint, the Board found it unnecessary to, and thus did not, reach the issue of whether the questioned union activity is protected by the First Amendment.

KXTV has petitioned to review this supplemental order and the unions have intervened in support of the order.

■ The company contends that the Board should not have concerned itself with what the Supreme Court decided in *Servette* and *Tree Fruits,* because our holding on the previous appeal became the law of the case and is therefore binding upon the Board.

None of the cases cited in support of this argument involved the intervention of a Supreme Court decision between the initial and second court of appeals decision in a proceeding which is still pending. A departure from the "law of the case" doctrine is indicated where there is such an intervening Supreme Court decision. See John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 91, 42 S.Ct. 196, 66 L.Ed. 475; City of Seattle v. Puget Sound Power & Light Co., 9 Cir., 15 F.2d 794, 795.

■ The company argues, further, that nothing in the *Servette* and *Tree Fruits* opinions of the Supreme Court, in any respect disturbs the conclusions of this court in its prior decision in this case. We stated there, in effect, that the advertising services of KXTV did not make it a producer of the "automobiles, bread, gasoline and beer" distributed by its advertisers as required by the proviso; nor did KXTV become a producer of products by advertising "a service, such as banking or cleaning." The *Servette* and *Tree Fruits* decisions of the Supreme Court, petitioner asserts, merely indicate that this court's prior decision went too far, insofar as it was later construed in Servette, 9 Cir., 310 F.2d 659, to hold that services of a wholesaler or distributor who physically handled tangible goods en route to the market place, was not a producer of the tangible products offered·for sale to the public.

In *Servette,* the Supreme Court held that one who is engaged in the wholesale distribution of tangible articles manu-factured by another, is himself a producer of such products, within the meaning of the publicity proviso. It seems to us that it must follow that one who is engaged in the business of advertising tangible articles manufactured by another, is likewise a producer of such products within the meaning of the proviso.

But KXTV is not engaged solely in advertising tangible articles. It also advertises banking, cleaning and other services. In our former opinion we pointed out the incongruity involved in regarding a television station as a producer of services inasmuch as the "products" referred to in the proviso are to be of a kind which are distributed by another employer. 310 F.2d at 597.

Nevertheless, the Supreme Court has spoken in such broad terms in *Servette,* that we think the incongruity to which we referred may not control the ultimate decision. The Supreme Court appears to place prime reliance upon the legislative history, and nothing has been called to our attention which indicates that Congress intended to differentiate between primary employers engaged in the production of tangible products and those involved in rendering services.[4]

In *Servette,* the Supreme Court said, 377 U.S. at page 55, 84 S.Ct. at page 1104:

"There is nothing in the legislative history which suggests that the protection of the proviso was intended to be any narrower in coverage than the prohibition to which it is an exception, and we see no basis for attributing such an incongruous purpose to Congress."

■ The prohibition set forth in section 8(b) (4) (ii) (B) covers the cited union activity, else KXTV would not have a case to begin with. The Supreme Court has said that the publicity proviso is to be given as broad an application as the statutory prohibition. It follows that, whatever difficulties an analytical

---

4. The Board has applied the proviso to protect publicity aimed at services despite the fact that services are incapable of distri-bution by another employer. Plumbers and Pipefitters Local Union 142, 133 N.L.R.B. 307.

dissecting of the proviso may reveal, they are not to stand in the way of giving that proviso a scope commensurate with the section to which it is appended.

Affirmed.