**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAN FRANCISCO TYPOGRAPHICAL UNION NO. 21, INTERNATIONAL TYPOGRAPHICAL UNION, AFL–CIO, et al., Respondents.**

**Roy O. HOFFMAN, Regional Director of the Twentieth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Appellees,**

v.

**SAN FRANCISCO TYPOGRAPHICAL UNION NO. 21, INTERNATIONAL TYPOGRAPHICAL UNION, AFL–CIO, et al., Appellants.**

Nos. 71–1681, 26042.

United States Court of Appeals, Ninth Circuit.

June 21, 1972.

Duane B. Beeson (argued), of Brundage, Neyhart, Grodin & Beeson, Nathan R. Berke, of Severson, Werson, Berke & Melchior, George O. Bahrs, of Bronson, Bronson & McKinnon, San Francisco, Cal., for appellants.

Warren Davidson, Deputy Asst. Gen. Counsel (argued), Marvin Roth, Supervisory Atty. (argued), Frank H. Itkin, Herbert Fishgold, Attys., Julius G. Serot, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Roy O. Hoffman, Regional Director, NLRB, San Francisco, Cal., for appellees.

Before CHAMBERS, TRASK and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

Two cases have been consolidated in this appeal: In N. L. R. B. v. San Francisco Typographical Union No. 21 (71–1681), the National Labor Relations Board petitions, pursuant to Section 10(e) of the National Labor Relations Act (29 U.S.C. § 151 et seq.), to enforce the Board's order that the respondent union cease and desist from picketing. In Hoffman v. San Francisco Typographical Union No. 21 (26042), the union appeals from a district court order citing the union and certain of its officers for civil contempt.

On March 17, 1970, Local 21, in furtherance of a primary labor dispute with the San Rafael *Independent Journal,* began picketing various retail stores which were buying advertising space in the *Journal.* Attached to the picket signs, which urged consumers not to purchase products advertised in the *Journal,* were copies of the advertisements themselves. The pickets also passed out handbills which urged shoppers not to patronize the various retail stores.

On April 9 and 24, 1970, respectively, the *Journal* and one of the retail stores filed complaints with the N. L. R. B. The regional director promptly sought an injunction against the union pending the Board's decision whether the picketing and handbilling constituted an unfair labor practice in violation of Section 8(b) (4) (ii) (B) of the Act, 29 U. S.C. § 158(b) (4) (ii) (B).

On April 28, 1970, the district court ordered the union to cease all picketing and handbilling where the object was to induce consumers to stop patronizing the stores or to cause the retailers to stop doing business with the *Journal.*

After the entry of the decree, the union continued its picketing, using the preinjunction picket signs, but altering its handbills so that they urged consumers not to purchase products which the retailers advertised in the *Journal.* On June 24, 1970, the court, on the regional director's motion, cited the union and certain of its officers for civil contempt.

On February 24, 1971, the N. L. R. B., adopting the findings and conclusions of its trial examiner, held that the union, both before and after the court's injunction, had engaged in an unfair labor practice (secondary boycott) in violation of Section 8(b) (4) (ii) (B).

### *The N. L. R. B.'s Petition for Enforcement*

A union may peacefully picket a neutral party when the object of the

picketing is to persuade customers not to buy a struck product. National Labor Relations Board v. Fruit and Vegetable Packers etc., 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964). When a retailer advertises in a newspaper or magazine, the advertized goods may also be treated, for picketing purposes, as the products of the newspaper or magazine. Great Western Broadcasting Corp. v. N. L. R. B., 356 F.2d 434 (9th Cir.), cert. denied, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966). Therefore, a union may peacefully picket a neutral retailer so long as the picketing seeks only to persuade the public not to purchase products advertised by the retailer in a newspaper with which the union has a primary dispute. Atlanta Typographical Union No. 48, 180 N.L.R.B. No. 164, 73 L.R.R.M. 1241 (Jan. 30, 1970); White Front Stores, 181 N.L.R.B. No. 61, 73 L.R.R.M. 1390 (Feb. 27, 1970).

■ However, where such secondary picketing is not limited to calling customers' attention to those products being advertised in the struck newspaper, but, rather, urges customers to avoid doing any business with the neutral party, the picketing becomes an unfair labor practice under Section 8(b) (4) (ii) (B). Honolulu Typographical Union No. 37 v. N. L. R. B., 131 U.S.App.D.C. 1, 401 F. 2d 952 (1968); *Atlanta Typographical Union No. 48, supra; White Front Stores, supra.*

The union contended before the Board that the picket signs adequately identified to the public those retail products which were being advertised in the *Journal.* The trial examiner determined, however, that the use of the "tear-sheet" newspaper advertisements on the picket signs did not adequately identify the struck products, because such advertisements were too difficult for shoppers to read.

■ The Board then held that the union had engaged in an unlawful secondary boycott against neutral retail stores. The evidence supports the trial examiner's factual findings. The Board's order therefore is valid.

The union argues that, because the retail stores advertise so many of their products in the *Journal,* and because the products advertised vary each day, any alternatives to using the actual advertisements on the picket signs would be unduly burdensome. However, as the Board suggested in *Atlanta Typographical Union No. 48, supra,* where the union chooses to engage in secondary picketing, the union must accept the burden of properly identifying the struck products. See also Honolulu Typographical Union No. 37 v. N. L. R. B., *supra.* The Board's petition for enforcement in 71–1681 is allowed.

### The Contempt Order

■ Pursuant to Section 10($l$) of the Act, 29 U.S.C. § 160($l$), a district court may temporarily enjoin picketing when there is "reasonable cause" to believe that the union is engaged in an unfair labor practice. San Francisco-Oakland Newspaper Guild v. Kennedy for and on Behalf of N. L. R. B., 412 F.2d 541 (9th Cir. 1969). There may be "reasonable cause" to support an injunction even when the question whether the union is engaging in an unfair labor practice is one of first impression. Kennedy for and on Behalf of N. L. R. B. v. Los Angeles Typographical Union No. 174, 418 F.2d 6 (9th Cir. 1969). And necessarily incident to the court's power to enjoin is the power to enforce its injunction by contempt proceedings. Evans v. International Typographical Union, 81 F. Supp. 675 (S.D.Ind.1948); N. L. R. B. v. Local 282, International Bro. of Teamsters, etc., 428 F.2d 994 (2d Cir.), vacated on other grounds, 438 F.2d 100 (1970).

By its terms, the injunction of April 28, 1970, was intended to achieve two related purposes: first, to put the union and its officers on notice that there was reasonable cause to believe that the picketing and handbilling prior to April 28 constituted an unfair labor practice, and that the challenged activities would have to cease pending the ultimate determination by the N. L. R. B.; and second, to

preclude the union from engaging in any other picketing which was prohibited by the provisions of Section 8(b) (4) (ii) (B).

After the injunction, the union resumed its picketing, in most instances employing the same picket signs used prior to April 28, 1970. The only modification in the union's conduct was a slight change in the wording of the handbills. Under the circumstances, the district court could have deemed the modification to be merely one of form rather than substance.

■ The injunction was aimed primarily at the union's method of picketing rather than at its handbilling. Section 8(b) (4) (ii) (B) did not preclude a union from distributing handbills in an attempt to induce a neutral retailer to stop doing business with a struck newspaper. *See* National Labor Relations Board v. Servette, Inc., 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964); Great Western Broadcasting Corp. v. N. L. R. B., *supra.* The union was, or should have been, aware that its picketing rights were more limited. *See* National Labor Relations Board v. Fruit and Vegetable Packers etc., *supra.* Yet, the district court found that in the face of the injunction the union continued to picket without, in any significant way, altering the nature of its picket signs.

The union argues that the N. L. R. B. itself did not rule until February 24, 1971, that the picketing constituted a violation of Section 8(b) (4) (ii) (B). Since the terms of the April 1970 injunction embodied the language of the Act, the union says the injunction was so unclear as to be unenforceable by contempt sanctions.

■ The union had agreed to the injunction's terms, and had sought no clarification of language. Accordingly, the union cannot now complain that the injunction's application was more strict than had been anticipated. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); N. L. R. B. v. Retail Clerks Internat'l Ass'n, 203 F.2d 165, 169 (9th Cir. 1953), aff'd on rehearing, 211 F.2d 759, cert. denied, 348 U.S. 839, 75 S.Ct. 47, 99 L.Ed. 662 (1954).

■■ The union also contends that, because it attempted in good faith, to bring its conduct within the limits of Section 8(b) (4) (ii) (B), the imposition of contempt sanctions, together with the prospect of "compensatory fines," was unwarranted. No fines have been imposed as yet, and though the district court explicitly ruled that fines would be determined and imposed in the future, the union's objection to such fines is premature. Further, good faith is not a defense to an action for civil contempt. McComb v. Jacksonville Paper Co., *supra.* Civil contempt sanctions, unlike those arising from criminal contempt, are not essentially punitive, but, rather, are intended to compensate the complainant (in this case, the N. L. R. B.) for injury caused by the contumacious conduct. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 55 L.Ed. 797 (1911); Morse-Starrett Products Co. v. Steccone, 205 F.2d 244 (9th Cir. 1953); Tobin v. Pielet, 186 F.2d 886, 888 (7th Cir. 1951).

■ The district court had adequate reason for holding the union in contempt of the injunction. The next question is whether the record contained "clear and convincing proof" that each of the named union officers was personally guilty of contumacious conduct. Hart Schaffner & Marx v. Alexander's Dept. Stores, Inc., 341 F.2d 101 (2d Cir. 1965); N. L. R. B. v. Local 282, International Bro. of Teamsters, etc., *supra.* Such "proof" cannot be said to exist merely because there is proof that the union, as an organization, violated the terms of the injunction. *See, e. g.,* United States v. Branch 36 Nat. Ass'n of Letter Carriers, 310 F.Supp. 482 (S. D.N.Y.1970).

■ The parties agreed to submit the contempt issue to the court solely on affidavits. The union's vice president, John J. DeMartini, admitted in his affidavit that he was in charge of the picketing activities which took place after

the issuance of the injunction. There was, accordingly, proof to support De-Martini's contempt citation.

The district court found that Don Abrams, the union's organizer, had participated in picketing after April 28, 1970. DeMartini stated in his affidavit that Abrams also had solicited participation in the postinjunction picketing. Hence, there was proof to support Abrams' citation.

There was, however, no proof that either Leon Olson, the union's president, or G. M. Bachich, the union's secretary-treasurer, had participated in the forbidden conduct. DeMartini speculated in his affidavit that these two officers were "probably" aware of the picketing, but such speculation does not constitute clear and convincing proof that they participated in it.

In these circumstances, Olson and Bachich were not proved guilty of contempt. The judgments against them are reversed, but in all other respects the decision in 26042 is affirmed.

The National Labor Relations Board's petition for enforcement in 71–1681 is allowed; the order of the district court in 26042 is reversed in part and affirmed in part.