### In re GOLD & SILVERSMITHS, INC. d/b/a Schopp's Jewelry Shoppe.

#### No. 91–13928 K.

United States Bankruptcy Court, W.D. New York.

Aug. 1, 1994.

Steven E. Cole, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

Harold P. Bulan, Trustee, Buffalo, NY.

## DECISION AND ORDER

MICHAEL J. KAPLAN, Bankruptcy Judge.

In the case of *In re Vecchio*, 20 F.3d 555 (2d Cir.1994) (decided April 7, 1994), the Second Circuit Court of Appeals held that the bar date for claims set forth in Bankruptcy Rule 3002 is void as to priority claims in a Chapter 7 case because 11 U.S.C. § 726(a)(1) does not distinguish between timely filed priority claims and untimely priority claims.

■ Because Bankruptcy Rule 1019(6) was amended in 1991 to incorporate the provisions of Bankruptcy Rule 3002 into the procedure for the filing of administrative expense claims in a case converted from another chapter to Chapter 7, this Court today adopts the view that the *Vecchio* decision requires that Bankruptcy Courts in the Second Circuit not enforce any bar date "rule" as to post petition claims ("administrative expense claims") filed in a converted case.

■ Consequently, the case presently at bar also presents the question of whether a bar date "order" entered by the Court, as opposed to mere notice of a bar date contained in a "rule," removes this case from the scope of *Vecchio*. The present Court rules that it does not so distinguish the case and that an administrative claims bar "order"

may not be given effect under pertinent Second Circuit authorities.

■■■■ Resultingly, the case at bar asks yet another question. Does the fact that the Second Circuit has now, in *Vecchio,* bound the Bankruptcy Courts of the Circuit to an interpretation of this issue that is different from these courts' earlier understanding, present "cause," under 11 U.S.C. § 502(j), for reconsideration of an Internal Revenue Service claim that had previously (on the eve of the *Vecchio* decision) been "disallowed"[1] for having missed the "administrative claims bar" set by Order of the Court?[2] As to this issue, the present Court holds that where, as here, a grant of reconsideration would *require* (by virtue of binding precedent) that the previously disallowed claim be now allowed, the Court may not exercise its discretion to grant reconsideration "for cause" until it determines whether there has been a material change in the relationship of the parties in reliance on the earlier order that disallowed the claim.

## FACTUAL BACKGROUND

This case was filed under Chapter 11 on November 14, 1991, and converted to Chapter 7 on September 2, 1992. This Court's usual "Administrative Claims Bar Order" was entered on October 19, 1992, pursuant to this Court's then-interpretation of Bankruptcy Rule 1019,[3] advising those whose claims arose after the filing of the Chapter 11 case, that in order to enjoy administrative expense status, their claims would have to be filed with the Court no later than December 15, 1992.

The Internal Revenue Service filed an administrative tax claim in the amount of $10,966.08. The claim was filed late (on July 19, 1993) and was objected to by the Trustee on January 4, 1994. The objection was heard on February 9, 1994 and adjourned to March 2,

1994. The Internal Revenue Service's position regarding that claims objection is stated in its present brief as follows:

> In light of prevailing legal authority in the Second Circuit prior to the Second Circuit's decision in *In re Vecchio,* 20 F.3d 555 (2d Cir.1994) (decided April 7, 1994), the United States chose to agree to the entry of an order disallowing the administrative claim, rather than litigating the issue to its conclusion. (Memorandum of the United States of America, filed June 24, 1994, page 1.)

The Order disallowing the claim as an administrative claim was entered on March 10, 1994.

During the pendency of the claims objection (on January 12, 1994, specifically), the Internal Revenue Service had filed an amended administrative claim in the amount of $13,127.77, because the earlier claim had been "estimated," and it is the ordinary practice of the Internal Revenue Service to amend an "estimated" claim as soon as it has more accurate figures. Again quoting from the government's brief, "The amended administrative claim, which is the subject of the instant objection by the Trustee, merely replaced the estimated amounts with tax figures which were based upon returns filed (late) by the debtor."

Thus, it being understood that the amended claim presents the very same taxes as were the subject of the Court's earlier order of disallowance, the government forthrightly recognizes that the present proceeding should be viewed as the government's request for reconsideration of the claim, rather than constituting, by some theory, a different claim and different objection. The Court appreciates and concurs in this aspect of the government's candid analysis.

---

1. The term "disallowed" is loosely used in custom and practice. A late-filed claim is not in fact "disallowed"; rather, it is allowed as a "late-filed claim." Similarly, a claim might be "disallowed" as a priority claim, but it may be silently understood that it will be allowed as a non-priority claim, if appropriate.

2. 11 U.S.C. § 502(j) provides, in pertinent part: "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case...."

3. By that time, Rule 1019 had been amended as discussed later, and this Court's interpretation of the Rule had been rendered erroneous.

Slightly less than a month after the Court's order disallowing the IRS's claim as an administrative expense claim, the *Vecchio* decision was handed down by the Circuit. Nineteen days after that, as yet understandably unaware of the Circuit's ruling, the Trustee filed the new claims objection against the amended claim, in his ordinary course of administration of the estate.

The government argues as follows:

Under the reasoning of *In re Vecchio, supra,* failure to timely file an administrative claim (which is a priority claim pursuant to 11 U.S.C. § 507(a)(1)) does not provide a basis for disallowance of that claim. Thus, under the circumstances of this case, reconsideration of the disallowance should be granted pursuant to 11 U.S.C. § 502(j) and Federal Rule of Bankruptcy Procedure 3008, and the amended administrative claim should be allowed in full.

In addition to the very recent change in the law, the United States submits that the following factors provide support for allowance of the amended administrative claim upon reconsideration: (1) The Trustee has not yet made any disbursements to any creditors, (2) the debtor failed to timely file tax returns for the taxes at issue necessitating the filing of estimated claims for such taxes, and (3) the original administrative (estimated) claim was filed approximately six weeks prior to the bar date for filing proofs of claim and seasonably amended after the debtor filed the applicable return. In sum, the allowance of the amended administrative claim in accordance with the Second Circuit's recent decision in *In re Vecchio,* will not impede the administration of the estate or unfairly prejudice other creditors, and furthers the purpose of the Bankruptcy Code by insuring that a legitimate (and in this case nonconsensual) creditor receives payment of amounts owed. [Footnotes omitted.]

The government's representation that the original administrative claim had been filed "prior to the bar date for filing proofs of claims" has reference to the fact that it was not until June 3, 1993—well after the bar date for administrative claims—that the Trustee determined that the case would be an asset case, and that an "asset notice" went out to creditors fixing a bar date for prepetition claims of September 1, 1993. Thus, the government argues that additional support for its position is found in the fact that although its administrative tax claim had not been asserted within the date fixed by the administrative claims bar order, it had been asserted within the time fixed for the filing of proofs of claims by all creditors generally.

## IN RE VECCHIO APPLIES TO ADMINISTRATIVE CLAIMS IN A CASE CONVERTED TO CHAPTER 7

■ The first issue presented is whether the *Vecchio* decision has effect on administrative claims filed in a case converted to Chapter 7, where such claims are governed by Bankruptcy Rule 1019. This question must clearly be answered in the affirmative since that rule was amended (in 1991) to remove, from what was then subsection "(7)" of the rule, the following clause:

The Court *shall order* that written notice be given to those entities, including the United States, any state, or any subdivision thereof, that their claims may be filed within 60 days from the entry of the order. . . .

Now renumbered to be subsection "(6)," the directive contained in Bankruptcy Rule 1019 regarding postpetition claims is that "on the filing of the schedule of unpaid debt, the Clerk, or some other person as the Court may direct, shall give *notice* to those entities, including the United States, any state, or any subdivision thereof, that their claims may be filed pursuant to Rule 3001(a)–(d) and 3002."

Thus, since 1991, the time limits of Rule 3002(c) have applied to post-petition but preconversion administrative claims, and it is those time limits that have been stricken down by the Second Circuit Court of Appeals.

## USE OF AN ORDER DOES NOT CHANGE THE VECCHIO RESULT

■ The second question is whether this Court's use of the administrative claims bar "order" changes the result.

The Court agrees with the Internal Revenue Service that the existence of a claims bar "order" does not change the *Vecchio* result; but the Court's reasoning differs slightly from that of the IRS. *Vecchio* establishes that a claims bar rule is inconsistent with 11 U.S.C. § 726(a)(1) with respect to *priority* claims. Presumably, the Circuit would enforce a claims bar "order" even as to priority claims if there were statutory authority for this Court to fix one. But as to Chapter 7's (at least) the only possible statutory authority is 11 U.S.C. § 105, and in the Second Circuit that provision "cannot be used in a manner inconsistent with the [other] commands of the Bankruptcy Code." *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 59 (2d Cir.1992).

The inconsistency of a claims bar with § 726(a)(1) having been established by *Vecchio,* it is *F.D.I.C. v. Colonial Realty* that prohibits this Court from enforcing an administrative claims bar set by an Order entered on authority of 11 U.S.C. § 105 alone.

## "CAUSE" FOR RECONSIDERATION DEPENDS UPON THE EQUITIES

■ The third issue is that of whether reconsideration should be granted. Does the fact that the Circuit has upheld (in a different case) an argument that IRS could have, and should have, but did not raise earlier in this case when the Trustee's pre-*Vecchio* motion to allow the claim only as a late-filed claim was sustained, provide "cause" for reconsideration of the previous disallowance of the claim?

Contrary to the IRS's assertion, there has not been a change in the law; what has occurred is the establishing of a contrary, binding precedent. This Court's prior order was not rendered "clear error" by the fact that the Circuit has reached a contrary decision; this Court reached a proper (albeit mistaken) decision in light of the IRS's non-opposition to the Trustee's objection, and the case authorities existing at the time of the ruling. There has been no change in circumstances, newly discovered evidence, or other similar event. What has occurred is that a higher court has adopted IRS arguments that the IRS failed to make here in response to the Trustee's timely motion.

There are sound reasons for not construing "cause" for reconsideration as broadly as the IRS requests.

Firstly, for the IRS to assert that no-one is prejudiced by reconsideration is too blithe. It is in the nature of bankruptcy cases that we cannot immediately determine whether prejudice may be wrought by reconsideration of such orders. The heart of the process is that creditors need not actively participate in every aspect of that process in order to enjoy its fruits, however bitter. Here we are discussing "priority" claims—claims that are paid ahead of non-priority claims. We have no idea whether or how many or which non-priority creditors have made what elections in reliance upon a docket that reflected that the IRS's priority claim was disallowed and that that decision became "final."

Seeing that claim disallowed and perhaps anticipating some distribution to non-priority creditors, a hypothetical non-priority creditor or a hypothetical principal of the Debtor may have elected not to involve herself in, or interfere with, various activities, e.g. to protest the price at which the trustee might have proposed to sell some asset or to protest the size of an attorney's fee application, or to encourage the trustee to initiate some other action. The longer the period of time between disallowance and reconsideration (sometimes years), the greater the potential for prejudice to the innocent hypothetical creditor or other party. (Here there is little chance of such prejudice, as noted later.)

■ Secondly, § 502(j) should not be interpreted in a way as to ignore the underpinnings of pertinent doctrines favoring finality.

■ There exists a "doctrine of judicial finality" by which it is established (not inflexibly, however) that in the interest that each controversy eventually come to an end, questions that have been fully considered and decided not be subject to open ended reconsideration.[4]

4. 6a Moore's Federal Practice ¶ 60.02.

11 U.S.C. § 502(j) tempers the doctrine of finality, just as does Rule 60 of the Federal Rules of Civil Procedure, and as did the ancient writs of *audita querela, coram nobis, coram vobis,* bill of review, and bill in the nature of a bill of review, which writs were replaced by the Federal Rules.[5]

The United States Supreme Court said of a litigant who sought relief from an order, alleging excusable neglect: "Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice.... His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of [a different case that supported his original position]. There must be an end to litigation some day, and free calculated, deliberate choices are not to be relieved from." *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

The Seventh Circuit Court of Appeals stated "Rule 60(b) provides for extraordinary relief. Because of the interest in finality of judgments, Rule 60(b) requires a showing of exceptional circumstances or a grievous wrong evoked by new and unforeseen conditions."[6] In that case the judgment sought to be reconsidered was an injunction and the government/movant relied on subparagraph (5) of Rule 60(b). The Circuit stated that "the question then is whether the government has met its burden of demonstrating under Rule 60(b)(5) that inequity results from continued enforcement of the injunction. This provision does not allow relitigation of issues that have been resolved by the judgment. Rather, it requires a change in the conditions that makes continued enforcement inequitable.... We will not blindly apply principle of finality when to do so will cause injustice. On the other hand, there must be an end to litigation someday. Absent a clear showing of grievous wrong,

judgments will not, and cannot be, be reopened."

Another Circuit Court, explaining that Rule 60(b)(5) does not permit reopening where the prior judgment that has been changed was in a different case, further examined the residual clause of Rule 60, Rule 60(b)(6), and reversed a District Court's grant of reconsideration of an injunction where the government "made a conscious and deliberate choice not to pursue ... appeal.... We do not speculate on the reasons why the government did not pursue its direct attack on the ... injunction; it is sufficient that the decision to do so was one of unfettered choice and free will. Having made that choice, the government must now live with its decision."[7]

But 11 U.S.C. § 502(j) statutorily mandates reconsideration "for cause." In the present court's view, § 502(j) was not intended fully to abrogate the doctrine of finality, even as to allowance and disallowance of claims. To the contrary, it appears that section 57k of the 1898 Bankruptcy Act and former General Order 21(b) and former Bankruptcy Rule 307 (from all of which section 502(j) was derived) were adopted because rules like F.R.Civ.P. 59 and 60 were not thought to apply to "proceedings in bankruptcy" under the 1898 Act, and some such flexibility was thought to be necessary. At 3 Collier on Bankruptcy 14th Ed., ¶ 57.23[1] it was pointed out, with regard to the 1898 Act, that "bankruptcy proceedings [then a defined term], where time is of the essence, are fraught with dangers of errors and inaccuracies, due to the multiplicity of interested but frequently ill-informed parties, as well as to the comparatively late stage at which a common trustee replaces the individual claimants." It is pointed out in that treatise that the general power of a bankruptcy referee it correct his or her own mistakes was a matter of some debate until it gradually was resolved in favor of such authority. In the meantime, Congress left no doubts with re-

---

**5.** 6a Moore's Federal Practice ¶ 60.04[1].

**6.** *DeFilippis v. United States,* 567 F.2d 341 (7th Cir.1977).

**7.** *Lubben v. Selective Service System Local Board No. 27,* 453 F.2d 645 (1st Cir.1972).

gard to the claims allowance process, having enacted § 57k to make it clear that claims that had previously been allowed could be reconsidered for cause. As to that provision it has been said, "the clearest cause for reconsideration is the discovery, subsequent to allowance, of new relevant facts or evidence that could not have been discovered at an earlier stage, or the discovery of clear error in the order of allowance." Collier on Bankruptcy 14th Ed., ¶ 57.23(3) (footnotes omitted).

Although Rule 60 of the Federal Rules of Civil Procedure now does apply in bankruptcy cases (by virtue of Bankruptcy Rule 9024), the roots of 11 U.S.C. § 502(j) suggest that it was not intended totally to abrogate finality as to allowance and disallowance of claims; it was intended to provide the flexibility to address the equities.

 For the protection of adverse parties as well as for judicial economy, parties should raise their arguments at the earliest appropriate time. To "lie back" during a period of evolution of the law and suffer an adverse ruling in the hopes that binding precedent may be set on better facts in a different case is fine. But to then seek reconsideration at the expense of others, when it is too late for your opponent to raise counterarguments that might have won the day even in the higher Court, is not lightly to be countenanced. This is particularly true where, as here, it is the same litigant (the IRS) who was "laying back" in this Court, but was vigorously pursuing its (eventually prevailing) arguments, against a different opponent in a different court. The potential for forum-shopping and for opponent-shopping is great, and if it has occurred, then let its effects be prospective only. Such shopping should not be rewarded with reconsideration of losses that were previously conceded as part of the effort.

 Nonetheless, it can be seen from the above that the doctrine of finality is not to be so rigidly applied as to work an injustice or an inequitable result, or so as to constitute a "grievous wrong."

 Even the doctrine of "Law of the Case" permits of some forgiveness of the misdirected. It is technically incorrect, of course, to invoke the doctrine of "Law of the Case" in a case that has never been the subject of an appeal.[8] But it has been noted that the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided." This was stated by the First Circuit Court of Appeals in *White v. Higgins,* 116 F.2d 312 (1st Cir.1940), wherein that court noted that the doctrine is not "an inexorable command," but rather the power does exist to reopen the points of law already decided. That Court stated that that power to reopen

"is a power which will necessarily be exercised sparingly, and only in a clear instance of previous error, to prevent a manifest injustice. The doctrine of Law of the Case is, normally a salutary one in the interest of economy of effort and of narrowing down the issues in successive stages of litigation. In the absence of exceptional circumstances, it would be unfortunate if on second appeal counsel felt free to argue de novo as a matter of course the points decided on previous appeal.... This being so, it would seem that if on second appeal we thought our earlier opinion was erroneous, we ought sensibly to set ourselves right, rather than to invite reversal above. But mere doubt on our part is not enough to open up the point for full reconsideration. Often when the decision is originally rendered we have doubts

**8.** As stated in Black's Law Dictionary, the term *"Law of the Case"* as generally used, *"designates the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same.... [It is the doctrine] which provides that an appellate court's determination* on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal given the same case and substantially the same facts.... [It is] that principle under which determination of questions of law will generally be held to govern case throughout all its subsequent stages where such determination has already been made on a prior appeal to a court of last resort."

enough. We do the best we can, make our decision and pass on to something else. "In the cases at Bar, this Court, as presently constituted, does doubt the correctness of our previous construction of [the statute].... But the question was fully and fairly presented to this Court on the earlier appeal; the facts were simple and not in dispute; we overlooked no controlling authority; and there has been no intervening decision of the Supreme Court ruling the other way." (Underline added.) (Citations omitted.)

*White at 317.*

In the case at Bar there has been a controlling, intervening decision of the Second Circuit Court of Appeals ruling the other way, but the present Court does not think that that fact decides the outcome. Rules like Rules 59 and 60 of the Federal Rules of Civil Procedure, and provisions such as 11 U.S.C. § 502(j), would not be necessary were it not thought that some principles like those underlying the doctrine of "Law of the Case" operate at the trial court level even in the absence of an appeal. The policies and purposes of the doctrine are well summarized in 5 Am.Jur.2d, Appeal and Error, and in examining them this Court is of the view that discretion is to be exercised when deciding whether a decision disallowing a claim should be left at rest even if it was error.

It is said at § 750 of that Article that "Since the very purpose of the doctrine of the Law of the Case is to settle the issues and to obviate the necessity of re-examining them on a later appeal, many courts have taken the view that it should be applied regardless of whether it is made to appear that the issues were mistakenly or erroneously decided on the original appeal, and, indeed, that it is only where the first decision was erroneous that there is any necessity for the doctrine to operate." There the Article attributes to another court the view that "manifestly, the doctrine would be utterly devoid of meaning if applied only when the decision upon the former appeal is sound. If the former decision is sound, there is no occasion to invoke the rule of the Law of the Case because any sound decision ought to be affirmed. No vitality or meaning can be

given to the doctrine unless it is made to apply to [preclude reconsideration of] an erroneous decision."

At Section 751 of the Article it is stated that "It has sometimes been held that the rule of the former decision must be applied, although in the interval between the two decisions the law in question has been changed by a controlling decision in another case." There is, however, authority ostensibly to the contrary. For example, in the case of *City of Seattle v. Puget Sound Power and Light Company,* 15 F.2d 794 (9th Cir. 1926) it was said that the "overwhelming weight of authority" is in favor of the application of the doctrine of law of the case, "unless between the two decisions there has been some change in the law by legislative enactment or judicial decision, which the [present] court is bound to follow." Id. at 795. (Underline added.)

The better view, in my opinion, has been stated as follows:

"The rule of 'The Law of the Case' is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power. Thus there is an abundance of authority to the effect that where a prior decision is palpably erroneous, it is competent for the court, not as a matter of right, but of grace, to correct it upon a second review where no wrong or injustice will result thereby, where no rights of property have become vested, where no change has been made in the status of the parties in reliance upon the former ruling, and where, following the decision on a former appeal, the court in another case has laid down a different rule, either expressly or by necessary implication overruling the previous decision." (Underline added.)

That was the holding rendered by the Supreme Court of Pennsylvania in the case of *In re Reamer's Estate,* 331 Pa. 117, 200 A. 35, 37 (1938). That case concerned a decedent's estate, and involved, as does the case presently at bar, the question of who are the correct persons to receive certain funds.

The Court found that the doctrine of Law of the Case should not be applied to exalt the earlier decision, and that the new binding judicial authority should be applied. But essential to that court's decision to change the earlier ruling regarding distribution of the decedent's estate, was its finding that the earlier, erroneous decision was of such a nature as to be governed by principles that addressed rulings that were "so gross a mistake as to amount to a legal fraud." The court stated that the "erroneous construction of the law ... affords no basis in morals, in reason, or in law, for a conscious repetition of the same error. The [earlier] decision ... was but an inconsistent interlude in the law of the subject with which it dealt, and the present situation is within both the letter and the spirit of those authorities in which it was held that the rule of the Law of the Case did not apply." *Id.* 200 A. at 38.

Perhaps most importantly, that court examined the effect upon the parties of the change in outcome, and found that those changes did not "create any equity" which called for the court's consideration. Furthermore the Court left undisturbed some small distributions of money that had been made in reliance on the earlier order.

■ As noted earlier, § 502(j) provides flexibility to the claims allowance process just as equity provides relief within the finality doctrine generally.

■ The IRS argues that as a matter of law, I should grant reconsideration, but then examine the equities in order to determine whether its previously disallowed claim should now be allowed. I disagree. For the reasons stated above, the equities must be determined in connection with the request for reconsideration. The leave granted in 11 U.S.C. § 502(j) by which "a reconsidered claim [must] be allowed or disallowed according to the equities of the case," does not grant the Court the equitable power to ignore an intervening binding command of the higher court. Rather, the equities must be examined in connection with the Court's determination of whether it will grant reconsideration in the exercise of its discretion.

As to this too there is authority to the contrary. In *Thurmon v. Mann,* 446 F.2d 1355 (8th Cir.1971), the Eighth Circuit seems to have taken the view that a bankruptcy case is, in a sense, one long "suit." Consequently, the court suggested, the Bankruptcy Court is not only at liberty to reconsider its decisions at any point along the way, but in fact there is no discretion to refuse to entertain a motion for reconsideration to correct an order which is contrary to intervening binding authority.

Whether the Eighth Circuit would sustain that view under the Bankruptcy Reform Act of 1978 is not evident. But here within the Second Circuit, in a 1937 case remarkably similar to that here at Bar, we find a different view.

In the case of *In re Jayrose Millinery Company, Inc.,* 19 F.Supp. 1013 (S.D.N.Y. 1937) the City of New York filed a tax claim in a bankruptcy proceeding. On March 27, 1936, the Referee in Bankruptcy allowed the claim but denied it priority. Thereafter, the United States Supreme Court, in a different case involving the same New York City tax ordinance, made it clear that the City was entitled to priority. The City had not appealed from the Referee's order in the *Jayrose* case, or sought review thereof. But after the Supreme Court had resolved the other case, the City sought reconsideration under § 57k of the 1898 Bankruptcy Act.

The District Court affirmed the Bankruptcy Referee's denial of that request. The District Court recited that "The Referee held that, taking the equities into consideration, the fact that the city permitted the period between January 20 and April 30 to elapse without having made any motion for re-examination of the claim, and in view of the fact that the creditors had been led to believe by virtue of the notice of the final meeting that there was no priority claim and they would receive a dividend of 7¾ percent, they were lulled into refraining from taking any possible action which they might otherwise have been disposed to take, and in the exercise of his discretion he denied the motion." *Id.* at 1014.

The District Court held that "The disposition of the case must be made upon the

ground that the city is foreclosed by its failure to preserve its rights by taking an appeal from, or seeking to review the said orders of the Referee. While the exception sometimes proves the rule, and the Court has the power under § 57k to grant relief for cause even after the time to appeal has expired, provided a distribution has not been made, the facts in this case do not seem to justify such an unusual exercise of discretion.... There must be a finality attached to orders of the character made by the Referee determining the status of claims filed. It is to correct errors that Appellate Courts exist and that appeals may be taken thereto, but it often happens, after a judge has decided a case following existing authority, and the parties have let the time to appeal expire, the authority so relied upon has been reversed, and certainly litigants who have forfeited their rights to appeal should abide thereby." *Id.*

Here, the IRS claims that the estate has benefitted, for had it sought review of this Court's earlier decision, that effort would have increased the costs of administration of the bankruptcy estate. The City of New York made the same argument in the *Jayrose* case. The District Court stated that "Counsel for the City made the point that if an appeal had been taken in many similar cases decided against it that it would have tremendously enhanced the cost of the administration of those bankruptcy estates. But that would hardly have been so if, after having properly protected its rights by appeal or petition to review, the matter were left in status quo by stipulation awaiting the final outcome of the pending appeal in [the other case which the Supreme Court ultimately ruled]." *Id.*

Importantly, the Second Circuit Court of Appeals did not fully agree with the District Court's decision. On appeal (*In re Jayrose,* 93 F.2d 471 (2d Cir.1937)), it modified the District Court's order. But in doing so, it seems principally to have disagreed with the District Court's conclusion that other parties had been "lulled" into refraining from the protection of their rights. Rather, the Circuit stated that "The record contains no suggestion of any 'equities' acquired by general

creditors by reason of the city's failure to apply more promptly for reconsideration of its claimed priority. It is true that the notice of April 30 advised creditors that no priority claim was pending. But, as this court held in *People of New York v. Hopkins,* 18 F.2d 731 (2nd Cir.1927), the mere disappointment of creditors in finding that an unexpected claim exists is not sufficient reason to exclude the tardy claimant, and particularly is this true in respect to tax claims." 93 F.2d at 474.

## CONCLUSION

The present Court views the above interpretations of the predecessor to § 502(j) to be entirely consistent with the Pennsylvania high court's statement of the "Law of the Case" doctrine in the *In re Reamer's Estate* case quoted above. All of the doctrines discussed herein require that inquiry be made into the question of whether "equities" have arisen, in reliance on the earlier order of disallowance, in favor of other parties in interest.

The present proceeding having come before the Court on the Trustee's objection to the amended claim of the Internal Revenue Service, and the Internal Revenue Service having properly suggested that the Court treat its opposition to that objection as a motion for reconsideration under § 502(j), there has been no opportunity for other parties in interest to be heard on any actions such parties may have taken, or refrained from taking, in reliance upon the earlier order of disallowance.

The Clerk is directed as follows: the Trustee's objection to the amended tax claim shall be docketed as "sustained, without prejudice" to the making of a motion by the government, seeking reconsideration thereof and seeking reconsideration also of the Court's order disallowing the estimated claim, and such motion shall be on notice provided by the IRS to all parties in interest, and shall clearly explain the effect of reconsideration and reversal upon the distribution of assets in the case.

If, upon hearing said motion, the Court is of the view that other parties in interest have not relied to their detriment upon the earlier orders, then the Court will grant reconsider-

ation, and, in accordance with the Circuit's command in *Vecchio,* will allow the amended claim administrative expense priority, despite its tardiness.

SO ORDERED.