**In re Fred KRAUTHEIMER, Debtor.**

**Philip D. RUPERT, Jr., Plaintiff,**

v.

**Fred KRAUTHEIMER, Defendant.**

**Bankruptcy No. 94 B 20027 JJC. Adversary No. 94–5039A JJC.**

United States Bankruptcy Court, S.D. New York.

June 18, 1997.

---

Harris, Beach & Wilcox, L.L.P. by Daniel J. McGuire, Rochester, NY, for Plaintiff.

Fred Krautheimer, Tarrytown, NY, pro se.

## DECISION GRANTING DEBTOR'S MOTION UNDER RULE 60(b)

JOHN J. CONNELLY, Bankruptcy Judge.

In this Chapter 7 case defendant/debtor Fred Krautheimer ("Krautheimer") moves to vacate this Court's order dated October 20, 1994 ("October 20 order") in favor of plaintiff/creditor Philip D. Rupert, Jr. ("Rupert") under Federal Rule of Civil Procedure 60(b)(6). The October 20 order, following a decision from the bench based upon collateral estoppel, granted summary judgment on Rupert's claim that a state court judgment against Krautheimer was excepted from discharge under 11 U.S.C. § 523(a)(6). This court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1408.

For the reasons set forth below, the Court concludes that it was inappropriate to give collateral estoppel effect to the state court judgment with respect to the issue of dischargeability, and the Court did not have a sufficient record to grant summary judgment.

### Background

In 1982, Krautheimer, a dentist and resident of Tarrytown, New York, began to sell medical and dental insurance in the lower Hudson valley for R.W. Michael's Agency, Inc. (the "Corporation"), a small insurance brokerage with its headquarters in Orchard Park, New York. In 1988, the owner of the business indicated that he wished to sell the Corporation. On the strength of his trust in and friendship with Robert Lohnes, the senior vice-president of the Corporation, Krautheimer agreed to buy the Corporation jointly with Lohnes. Because Krautheimer had no experience in the insurance business other than sales, he remained in his capacity as salesman and left the day-to-day operation of the Corporation to Lohnes. As Krautheimer explained in state court, "I was completely dependant upon Mr. Lohnes." Krautheimer became a salaried employee of the Corporation, visiting the Orchard Park headquarters about once a month.

In late 1989, Lohnes became terminally ill. Concerned with the continued operation of his business, Krautheimer began to search for a replacement for Lohnes. In May 1990, after extended negotiations in which he interviewed several candidates, Krautheimer hired Rupert as President of the Corporation. Lohnes died in June 1990. In July 1990 Rupert signed an employment contract to serve as President of the Corporation for eight years at $75,000/year plus 33.3% of the profits of the Corporation. Krautheimer signed the employment contract on behalf of the Corporation as Chairman of the Board of Directors and Chief Executive Officer.

For reasons not germane to the issues at hand, Krautheimer lost confidence in Rupert, and on June 10, 1991, Krautheimer terminated Rupert's employment with the Corporation. One week later, Rupert sued Krautheimer, the Corporation and two other defendants in New York State Supreme Court. The complaint (the "state complaint") alleged breach of contract by the Corporation and purported claims of tortious interference with contract against Krautheimer and the two other defendants.

Krautheimer's attorney was forced to withdraw for personal reasons approximately one month before the trial date. Krautheimer appointed new counsel approximately three weeks before the trial and a motion for a continuance was denied. The action proceeded to trial on October 19, 1993.

After a six-day trial the jury found in favor of Rupert against the Corporation and Krautheimer. The jury specifically found: (1) that the Corporation breached the employment contract, (2) that "the defendant, Fred Krautheimer, unduly interfere[d] with the employment contract by inducing the Defendant, R.W. Michaels Agency, Inc., to breach the contract ...", and (3) $725,000 unspeci-

fied "damages" plus interest and costs, for a total of $889,238. The claims against the other two defendants were either abandoned or dismissed.

It is not clear whether Krautheimer had counsel immediately after the state trial. But, for whatever reasons, Krautheimer did not appeal the state court judgment against him. Instead, in early 1994, Krautheimer voluntarily filed a petition for relief under Chapter 7 of the Bankruptcy Code. On February 28, 1994, Rupert commenced this adversary proceeding for a determination that Krautheimer's judgment indebtedness is nondischargeable under 11 *U.S.C.* § 523(a)(6). In July 1994, Rupert moved for summary judgment based on the doctrine of collateral estoppel. Krautheimer filed a memorandum of law in opposition by new counsel. However, this counsel, who was retained by Krautheimer sometime after his bankruptcy petition was filed, also had to withdraw for personal reasons before the summary judgment hearing. Thus, Krautheimer filed a supplemental memorandum of opposition *pro se,* and from that point forward Krautheimer has been without counsel in this case.

On October 20, 1994, after hearing oral argument by Rupert's counsel and Krautheimer *pro se,* this Court took a short recess and then rendered a bench decision granting Rupert's motion for summary judgment based on the premise that Krautheimer was collaterally estopped from a trial on the merits of the elements of discharge under section 523(a)(6) by reason of the state court jury verdict.

In November 1994, Krautheimer filed a "Motion to Dismiss Order Granting Plaintiff Summary Judgment" under Rule 60(b)(3) of the Federal Rules of Civil Procedure. A Memorandum of Law in Opposition was filed by Rupert, and this Court denied that motion on March 10, 1995. During the following year other matters were litigated between the parties of no relevance to the issues at bar. Then, on April 30, 1996 Krautheimer, still acting *pro se,* filed this motion under Rule 60(b)(6) to have the summary judgment vacated.

In response, Rupert makes four arguments: (1) Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") is generally not a proper vehicle for this type of "attack" on the "merits of a judge's decision" and Krautheimer has not met the standard for relief; (2) this motion, to the extent that it may be allowed, is properly made under Rule 60(b)(1) and is therefore time barred by the one-year statute of limitations for Rule 60(b)(1) motions; (3) even if placed under Rule 60(b)(6), Krautheimer is time-barred here as well; and (4) this Court's prior decision was correct.

### Discussion

#### I. *Applicability and timeliness of this motion under Rule 60(b )*

The threshold questions are whether this motion applies to subsection (1) or subsection (6) of Rule 60(b) and whether this motion is timely. I conclude that Rule 60(b)(6) applies and that the motion is timely.

■ As an overarching rule, this Court acknowledges that it is strongly espoused in this circuit that *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), and should be "given the benefit of the doubt." *In re Boyer,* 108 B.R. 19, 23 (Bankr.N.D.N.Y.1988). This rule is especially pertinent given the "liberal construction afforded to Federal pleadings." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957)). Thus, the Second Circuit has explained that it has "long evinced a sensitivity toward the plight of the uncounselled [party] attempting to navigate the technically-laden road to the courthouse." *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984).

■ Consequently, it is not surprising that in a Second Circuit case in which the Court of Appeals reversed a ruling of a district court denying a *pro se* plaintiff's motion to set aside a judgment under Fed. R. Civ. Pro. 55(c), it wrote:

The district court also abused its discretion in failing to take into account [the plaintiff's] *pro se* status. Implicit in the right to self-representation is an obligation on part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules.

*Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (internal citation omitted). One Second Circuit court has even gone so far as to comment that a *pro se* litigant's complaint "should be given solicitous and generous consideration . . . and that summary disposition should rarely be granted . . .". *McPartland v. American Broadcasting Companies, Inc.,* 113 F.R.D. 84, 85 (S.D.N.Y.1986) (quoting *Raitport v. Chemical Bank,* 74 F.R.D. 128, 129 (S.D.N.Y.1977)). Thus, this Court is eminently mindful that a *pro se* debtor must be given leniency in his motions before this court.

Federal Rule of Civil Procedure 60(b) is incorporated in Bankruptcy Rule 9024. The Rule lists six general reasons for relief from a judgment. In relevant part, it states that

on motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . [or] (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for [reason (1)] not more than one year after the judgment, order, or proceeding was entered or taken.

Since it has been said that Rule 60(b)(6) cannot be invoked if the reasons asserted for relief are encompassed in one or more of the first five subsections, *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986) (citing *Matter of Emergency Beacon Corp.,* 666 F.2d 754, 758 (2d Cir.1981); *United States v. Cirami,* 535 F.2d 736, 740 (2d Cir.1976)), a threshold question is whether Krautheimer's motion properly falls under subsection (1) or (6).

There is a split in authorities about whether judicial error is contemplated in Rule 60(b)(1). *See In re Rebeor,* 89 B.R. 314, 323 n. 6 (Bankr.N.D.N.Y.1988). The benchmark case in the Second Circuit analyzing this question is *Matter of Emergency Beacon Corp., supra.* In weighing a similar issue to that raised here, the Court of Appeals wrote:

Generally [subsection (1)] has been invoked to remedy the mistake of a party or his representatives. Although the language of the current Rule 60(b)(1) is broad enough to encompass errors by the court, the authorities are divided as to whether it is properly so interpreted.

*Id.* at 759 (footnote omitted). The Court then went on to apply subsection (6), saying that it was the only subsection applicable to the case. *Id.* at 760.[1] Therefore, the Court did not definitively answer the question, but apparently left the issue open to the discretion of the lower courts.

■ Generally, Second Circuit courts have asserted the position that judicial mistake is encompassed in subsection (1). *See In re Rebeor,* 89 B.R. 314, 323 n. 6; *O'Grady v. Secretary Of the United States Department of Health and Human Services,* 661 F.Supp. 1030, 1034–1035 (E.D.N.Y.1987). However, even these courts have recognized that this determination is discretionary. *See O'Grady,* 661 F.Supp. at 1034 ("All motions for relief under Rule 60(b) . . . are addressed to the court's discretion . . . and under the particular circumstances presented by the pending motion . . . it would be more equitable to treat the motion [under subsection (1)] . . ."); *In re Rebeor,* 89 B.R. at 323 ("'In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality'") (quoting *Kotlicky v. U.S. Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987)); *see also Beacon,* 666 F.2d at 760 ("A motion under Rule 60(b) is addressed to

---

1. Incidentally, this case refutes Rupert's assertion, made without any citation, that "all of the cases allowing the motion to be made based on judicial mistake are decided under [subsection (1)]."

the sound discretion of the trial court …"). Accordingly, this Court must determine whether subsection (1) or (6) applies based upon the circumstances of the case.

■ This Court holds that, under the circumstances present here, it is more equitable and proper to employ subsection (6). *See Quevedo v. Postmaster, United States Postal Service,* 774 F.Supp. 837, 839 (S.D.N.Y.1991) (quoting *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949)) ("A court may exercise its discretionary power under [subsection (6) ] whenever appropriate to accomplish justice' "). The Second Circuit has called the court's discretion under subsection (6) "especially broad" given the holding from *Klapprott. International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). As stated in the *Beacon* case, subsection (6)

> is properly invoked when there are extraordinary circumstances, *Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); see *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir. 1977), *or* where the judgment may work an extreme and undue hardship, *see United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir.1953).

666 F.2d at 759. *See Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1129 (S.D.N.Y.1986), *aff'd* 822 F.2d 14 (2d Cir. 1987); *Nemaizer,* 793 F.2d at 63 (holding that a movant must show "extraordinary circumstances justifying relief" or "extreme and undue hardship"). Rupert, in his opposition brief, failed to take note of or address the "extreme or undue hardship" option under subsection (6).

The scope of subsection (6) has consistently been held in the Second Circuit to be broad. Judge Learned Hand explained that subsection (6) is "a discretionary dispensing power" in *Karahalias,* 205 F.2d at 333. A later court said that subsection (6) "should be liberally construed when substantial justice will thus be served." *Quevedo,* 774 F.Supp. at 839 (citing *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir.1963)). In 1977, *Cirami* called it a

"grand reservoir of equitable power." *Cirami,* 563 F.2d at 32.

In perhaps the broadest application of the subsection, the Second Circuit went so far as to allow a *non-party* to invoke subsection (6) to modify a final judgment. The core of its holding was that the party was "sufficiently connected and identified with the … suit" to have standing. *Dunlop v. Pan American World Airways, Inc.* 672 F.2d 1044, 1052 (2d Cir.1982). The court justified such an immense scope of discretion by explaining that "the Rule was not designed to restrict relief." *Id.* (citing 7 *Moore's Federal Practice* ¶ 60.34, at 516.4).

Hence, it is surprising that the *Nemaizer* court, commenting on *Cirami,* stated, "Thus, whether the water in the reservoir is scant or grand, is far from clear." *Nemaizer,* 793 F.2d at 63; *e.g., In re Wills Motors, Inc.,* 133 B.R. 303, 309 (Bankr.S.D.N.Y.1991), *aff'd sub nom. SAAB Cars USA, Inc. v. Wills Motors, Inc.,* 134 B.R. 124 (S.D.N.Y.1991). Based on these cases, the trend appears to be towards a "grand" reading of the subsection. *See Hatzlachh Supply, Inc. v. Moishe's Electronics, Inc.,* 848 F.Supp. 25, 27 (S.D.N.Y.1994), *aff'd* 50 F.3d 4 (2d Cir.1995) (citing *Dunlop* and *Radack* and calling the subsection "flexible.") This Court will follow the predominant trend.

■ The Court turns to the main point in Rupert's substantive (as opposed to procedural) opposition. In "Point III," Rupert relied on the case of *In re Gold & Silversmiths, Inc.,* 170 B.R. 538 (Bankr.W.D.N.Y. 1994), to argue that since Krautheimer did not appeal his summary judgment motion, he cannot use 60(b) as an appeal method; therefore, he must "live with" this Court's prior determination. However, *Gold* is distinguishable because it involved the lack of an appeal by the Internal Revenue Service, not a *pro se* debtor with little legal knowledge or experience. *In re Gold & Silversmiths, Inc.,* 170 B.R. at 543. All of the cases cited in *Gold* to support its position involve government inaction. *Id.* at 543–544.

This Court, recognizing the unique circumstances of a *pro se* litigant, will not follow this standard. As the Third Circuit Court of Appeals wrote, as dicta, in a strikingly simi-

lar situation, "[If] a *pro se* litigant did not understand that errors committed by the district court could be reviewed on appeal, it might be appropriate under some circumstances to grant relief from the district court's order or judgment under Rule 60(b)(6)." *Martinez–McBean v. Government Of the Virgin Islands,* 562 F.2d 908, 912–913 (3d Cir.1977) (dicta without further elaboration). It is clear to this Court, based on the pleadings filed by Krautheimer, that he did not fully understand the intricacies of civil procedure. Accordingly, the argument by Rupert that Krautheimer must "live with" the judgment simply because he did not appeal is rejected.

The second argument under "Point III" is that Krautheimer did not allege "exceptional circumstances" sufficient to meet the burdens of subsection (6). (*Id.*) Rupert asserts that if "the moving party fails to demonstrate exceptional circumstances" then the motion "must be denied." (*Id.*) Rupert is correct in asserting that "exceptional circumstances" are the prevalent threshold to a 60(b) motion. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994). But, the Second Circuit has also stated that "motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell in Behalf of Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990), *cert. granted,* 498 U.S. 1023, 111 S.Ct. 669, 112 L.Ed.2d 662, aff'd. 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (citing *Nemaizer,* 793 F.2d at 61). Thus, this Court believes that the Second Circuit has yet to trump the overarching purpose of Rule 60(b) to allow courts the discretion of correcting errors "upon such terms as are just." Fed. R. Civ. Pro. 60(b); *see also Klapprott,* 335 U.S. at 614–615, 69 S.Ct. at 390–391, 93 L.Ed. 266 (a motion under Rule 60(b)(6) should be granted when "appropriate to accomplish justice."). Therefore, while it is true that Krautheimer did not perfectly allege "exceptional circumstances," the Court is again cognizant of the special deference given to *pro se* litigants and the discretion that is granted to the courts of this circuit in 60(b) motions.

There can be no doubt that there exist here "extraordinary circumstances" causing "extreme or undue hardship" for Krautheimer by reason of the collateral estoppel ruling that prevented Krautheimer from getting an opportunity to litigate on the merits the dischargeability of an almost $900,000 debt. As the Third Circuit explained in reversing a summary judgment motion under subsection (6):

> In reaching our decision ... we are not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments. However, these commendable aspirations should never be used to thwart the objectives of the blind goddess. Furthermore, [summary judgment] precluded an adjudication on the merits of the [movant's] claims ... thus constituting the "extreme and unexpected hardship" addressed in *[United States v.] Swift* [286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) ].

*Boughner v. Secretary of Health, Education and Welfare,* 572 F.2d 976, 978–979 (3d Cir. 1978).

This case meets the substantive factors that circuit courts have considered in granting relief under subsection (6):(1) the desire to "resolve disputes on their merits," *Teamsters, Chauffeurs Local No. 59 v. Superline Tr.,* 953 F.2d 17, 19 (1st Cir.1992), (2) the existence of a "meritorious claim or defense" by the movant, *Lepkowski v. United States Department of Treasury,* 804 F.2d 1310, 1314 (D.C.Cir.1986), *see also Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir.1981) ("[A] defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial ...") and (3) the absence of unfair prejudice to the opposing party. *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990). Krautheimer (1) was denied an opportunity to litigate the issue of dischargeability on the merits by the application of collateral estoppel on summary judgment and (2) has potential defenses to Rupert's claim under section 523(a)(6) which can be adjudicated fairly only upon an evidentiary hearing, and Rupert (3) cannot be said to be unfairly prejudiced because he, like Krau-

theimer, will have his day in this Court at a trial on his claim under section 523(a)(6). When combined with the unique procedural history of this case and the fact that Krautheimer has been proceeding as a *pro se* litigant for almost two years, this Court believes that relief should be granted under subsection (6). These are indeed "exceptional circumstances."

In this case, there was much more than just an "error" by the court—Krautheimer deserves, in the interests of justice, his full day in court. As an early treatise on civil procedure explained: "The discretion should ordinarily incline towards granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue. Equitable principles may be a guide in administering relief." *United States v. Williams*, 109 F.Supp. 456, 462 (W.D.Ark. 1952) (quoting Barron and Holtzoff, 3 *Federal Practice and Procedure Rules Edition*, § 1323, p. 253). As the Supreme Court has said that "fair hearings are in accord with elemental concepts of justice ..." *Klapprott*, 335 U.S. at 615, 69 S.Ct. at 390, Krautheimer should be allowed to present evidence and testimony in his defense.

The final issue to resolve is the requirement of subsection (6) that the motion be made within a "reasonable" time. Rupert, in his opposition memorandum, predicated his arguments regarding the statute of limitations almost exclusively on the use of Rule 60(b)(1), which has a one-year limit. As the Court has determined that this motion is properly considered under subsection (6), the Court disregards the arguments made by Rupert regarding Rule 60(b)(1).[2]

The only argument that Rupert makes relative to Rule 60(b)(6) is identical to that made for Rule 60(b)(1). Despite Rupert's assertion that the "statutory time for appeal" is "prima facie evidence" of "reasonable time," the Court has not found one case, nor is one cited by Rupert, that supports this proposition. The only authority that Rupert cites for his contention is the *Wright* treatise, which outlines this policy as applicable to Rule 60(b)(1) *Wright, supra*, § 2858. Therefore, the Court rejects this lone argument.

In fact, the general rule of "reasonableness" mirrors the philosophy apparent in all of the cases examined by the Court involving Rule 60(b): discretion. The general rule is explained best in *Moore's* treatise: "[What] is reasonable time must be determined in light of all attendant circumstances, intervening rights, ... prejudice to the adverse party, the commanding equities of the case, the general desirability that judgments be final and other relevant factors ..." 7 *Moore's Federal Practice, supra*, ¶ 60.27[3], at 60–305, 60–306 (internal footnotes omit-

2. The Court notes that Rupert argues Krautheimer made the motion under Rule 60(b)(6) "in order to avoid the [one-year] statute of limitations [under Rule 60(b)(1)]," which has been found by some courts as against the language of Rule 60(b). (Pl.'s Mem. Opp'n Def.'s Mot. Relief at 6.) Considering Krautheimer's demonstrated lack of procedural knowledge, *supra* p. 41–43, the Court finds this argument counterintuitive and lacking merit.

Furthermore, even if this Court had found the motion applicable under Rule 60(b)(1) as opposed to Rule 60(b)(6), it would still have questioned the "untimeliness" of the motion. As previously stated, a month after the Court granted Rupert's summary judgment motion, Krautheimer timely filed a "Motion to Dismiss Order Granting Plaintiff Summary Judgment" under Rule 60(b)(3). In Rupert's Memorandum of Law in Opposition to Krautheimer's motion at p. 41, dated December 28, 1994, Rupert argued that this motion should be denied "because he is attempting to reargue the summary judgment

motion." While this Court denied the dismissal motion under Rule 60(b)(3), in retrospect, it appears that Rupert was correct insofar as Krautheimer was seeking relief from what he perceived to be an erroneous judgment. However, not being represented by counsel, Krautheimer unskillfully but timely invoked subsection (b)(3) as opposed to subsection (b)(1) or (b)(6). Consequently, even if this Court were to determine that Rule 60(b)(1) applied to Krautheimer's present motion, it would have treated the motion timely as it relates back to Krautheimer's timely motion in November 1994 to "reverse" the October 20, 1994 order. *See Traguth v. Zuck*, 710 F.2d at 95 (It is the court's obligation to make "reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights."); *Moorish Science Temple of America, Inc. v. Smith*, 693 F.2d 987 (2d Cir.1982) (Given liberal pleading standings permitted in *pro se* complaints, district court should have considered inmate's civil rights claim even though it was not appropriately raised in his habeas corpus petition.).

ted). *See also Beacon,* 666 F.2d at 760. Predictably, there is no solid pattern that can be derived from the case law on the issue of reasonableness. *See Id.; In re Nick Julian Motors,* 148 B.R. 22, 26–27 (Bankr.N.D.Tx. 1992) (citing several cases where various time periods, from 30 days to six months, were considered unreasonable for many reasons); *Klapprott, supra* (four years considered reasonable). As one court considering the reasonableness of a two-year delay in filing commented, "Although a two year delay is not necessarily unreasonable, it becomes unreasonable when not accompanied by unusual circumstances or some other reasonable explanation." *Solitron Devices, Inc. v. United States,* 16 Cl.Ct. 561, 566–567 (1989). This Court, based upon the analysis of this entire case, feels that these unusual circumstances are such that 18 months (from October 1994 to April 1996) was not an unreasonable time for filing the motion.

■ As a District Court, confronting a situation in which a petitioner sought Rule 60(b)(6) relief approximately 16 months after judgment, wrote:

> [It] will be readily conceded that in some instances one's freedom of action may be as severely restricted by virtue of economic and other conditions as though he were actually physically confined ... To hold that the petitioner is not entitled to the relief sought under Rule 60(b)(6) would place a far more narrow interpretation of the rule than that intended. All that petitioner is requesting is an opportunity, assisted by competent legal counsel, to present testimony to the court supporting [his claim.] This request is not unreasonable.

*In re Cremidas' Estate,* 14 F.R.D. 15, 18 (D.Alaska 1953). While the facts in that case were somewhat different, the general principle stands: a narrow reading of reasonableness under the circumstances of merely reversing a summary judgment is an abrogation of justice when a *pro se* movant is and has been litigating under adverse conditions. This Court fails to see how justice is served by denying Krautheimer an opportunity to present a defense in a fundamental bankruptcy matter.

## II. *Governing legal principles*

### A. *Discharge and section 523(a) (6 )*

Initially, it is important to take stock of the gravity of the issue being reconsidered by this Court. The concept of the discharge is, without question, the "holy grail" of the Bankruptcy Code. Indeed, it forms the nucleus around which the Code orbits. In one of the earliest Supreme Court decisions dealing with the Bankruptcy Act, Justice Day commented:

> The systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligations and responsibilities which may have resulted from business misfortunes.

*Wetmore v. Markoe,* 196 U.S. 68, 76, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904); *see Local Loan Co. v. Hunt,* 292 U.S. 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

■ Congress reiterated this viewpoint when it passed the Bankruptcy Reform Act in 1978, commenting that discharge is "at the heart of the fresh start provisions of the bankruptcy law." *Matter of Martonak,* 67 B.R. 727, 728 (Bankr.S.D.N.Y.1986) (quoting 11 U.S.C. § 727 no. 595, 95th Cong., 1st Sess. 384 (1977); No. 989, 95th Cong., 2nd Sess. 98 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5884, 6340). Thus, non-dischargeability is "perceived to be a punitive exception to the 'fresh start' policy and should be found reluctantly." *Matter of Martonak,* 67 B.R. at 728 (citing *In re Huff,* 1 B.R. 354, 357 (Bankr.D.Utah 1979); *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)); *accord In re Harron,* 31 B.R. 466, 468 (Bankr.D.Conn.1983).

■ Furthermore, it is vital to note that it is within the exclusive purview of the bankruptcy court to determine whether debt is dischargeable. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). With that power comes a broad ability and obligation to review all material in the record of relevance to the dischargeability of a debt. In one of the early opinions discussing this power, the Second Circuit, in a deci-

sion joined by Judge Learned Hand, wrote, "The dischargeability of the claims is not to be settled by the form of the complaint but resort may be had to the entire record to determine whether they fall within the exception." *Greenfield v. Tuccillo*, 129 F.2d 854, 856 (2d Cir.1942). As one court explained,

> On a motion for summary judgment, a Bankruptcy Court has a duty to re-examine the facts giving rise to the debt. However, to assist the Court in its task, it may look to the record of proceedings in the State Court to determine the character and nature of the debt to determine dischargeability. The Court may also consider the State Court findings as evidence in determining whether the Motion for Summary Judgment should be granted.

*In re Rubitschung*, 103 B.R. 1010, 1011 (Bankr.C.D.Ill.1988) (internal citations omitted).

The Code lists specific circumstances in 11 U.S.C. § 523(a) where debt is considered nondischargeable. Under subparagraph (6), any debt attributable to a "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. The policy behind 523(a)(6) was nicely summarized as follows:

> The purpose of this provision is to avoid rewarding debtors who engage in blameworthy conduct by preventing them from escaping liability. Because discharge in bankruptcy is an equitable form of relief by debtors, it will not be allowed in cases where debts arose from conduct involving egregious circumstances. Thus, debts for willful and malicious injury are morally distinguishable from other types of debt deserving of discharge.
>
> \*   \*   \*   \*   \*   \*
>
> [ ] the policy behind Section 523(a)(6) is aimed at an aggravated type of misconduct that is socially reprehensible. Indebtedness resulting from this type of conduct is not worthy of discharge in bankruptcy.

Ahrend and Thomsen, *Tort Claims and Judgments as Debts for "Willful and Malicious injury" Nondischargeable Under Sec-*

tion 523(a)(6) of the Bankruptcy Code, 100 Com. L.J. 498, 498, 531 (1995).

The terms "willful" and "malicious" are separate elements, both of which must be satisfied. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985). Not surprisingly, the term "willful" has been interpreted to mean an act done deliberately or intentionally. *In re Cohen*, 121 B.R. 267, 270 (Bankr. E.D.N.Y.1990) (citing *In re Ikner*, 883 F.2d 986 (11th Cir.1989); *In re Hartley*, 869 F.2d 394 (8th Cir.), *reh'g denied*, 874 F.2d 1254 (1989); *In re Bossard*, 74 B.R. 730 (Bankr. N.D.N.Y.1987); *In re DeRosa*, 20 B.R. 307, 313 (Bankr.S.D.N.Y.1982); *In re Pommerer*, 10 B.R. 935, 940 (Bankr.D.Minn.1981); 3 *Collier on Bankruptcy*, § 523.16, p. 523 (15th ed.1989)). But, more importantly for this case, the definition of willful connotes the desire by a debtor to *actually harm* the creditor. "It is the *injury to the creditor* which must have been intentional—not the action of the debtor which caused the [injury.]" *Hartley*, 869 F.2d at 395 (emphasis added).

The meaning of the term malicious has been the subject of substantial debate. As the National Bankruptcy Conference's Code Review Project has commented, "There is apparent confusion and a split in the circuits in the interpretation of 'willful and malicious,' particularly as to the 'malicious' requirement in the statute." The National Bankruptcy Conference's Code Review Project, *Reforming the Bankruptcy Code*, May 1, 1994, at 141. The Second Circuit has finally spoken on the matter. *In re Stelluti*, 94 F.3d 84 (2d Cir.1996). One bankruptcy court in this Circuit used a definition of malicious as "conduct that is not merely tortious, but which is also wrongful and without just cause or excuse." *In re Contella*, 166 B.R. 26, 28 (Bankr. W.D.N.Y.1994) (citing 3 *Collier on Bankruptcy* § 523.16[1] 523–129 (15th ed.1989)). But this articulation, without more, is not adequate because the words "wrongful and without just cause or excuse" could as well be applied to any ordinary breach of contract or any ordinary tort.[3] Some courts have said that the creditor must show that "the debt-

---

**3.** Indeed, conduct which is *not* found to be "wrongful," or which is found to be *with* "just

cause or excuse," generally would not give rise to liability at all.

or's motive was to harm the creditor or its property." *Cohen,* 121 B.R. at 270 (citing *In re Akridge,* 89 B.R. 66 (9th Cir. BAP 1988); *In re Stover,* 88 B.R. 479 (Bankr.S.D.Ga. 1988); *In re Nelson,* 10 B.R. 691 (Bankr. N.D.Ill.1981); *In re Hodges,* 4 B.R. 513 (Bankr.W.D.Va.1980)). In *In re Long,* 774 F.2d 875 (8th Cir.1985), the Court explained its interpretation by saying:

> Congress tells us in § 523(a)(6) that malice and willfulness are two different characteristics. They should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable. We are convinced that if malice, as it is used in § 523(a)(6), is to have any meaning independent of willful it must *apply only to conduct more culpable than that which is in reckless disregard of creditors' economic interests, and expectancies,* as distinguished from mere legal rights. Moreover, *knowledge that legal rights are being violated is insufficient to establish malice,* absent some additional "aggravated circumstances," under *Davis [v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)] and its recent progeny.

*In re Long,* 774 F.2d at 880–881 (emphasis added) While a number of courts follow an "actual malice" standard, *see In re Contella,* 166 B.R. at 28 (citing 3 *Collier on Bankruptcy* § 523.16[1] 523–129 (15th ed.1979)); *In re Gallaudet,* 46 B.R. 918, 927 (Bankr.D.Vt. 1985); *In re Capozziello,* 55 B.R. 951, 955 (Bankr.D.Conn.1985); *cf. In re Jennings,* 188 B.R. 110, 113 (Bankr.E.D.N.Y.1995) (applied in the context of a conversion), the Second Circuit has applied an "implied malice" standard. *In re Stelluti,* 94 F.3d at 88; *see In re Overmyer,* 52 B.R. 111, 120 (Bankr. S.D.N.Y.1985); *In re Chapin,* 155 B.R. 323, 327 (Bankr.W.D.N.Y.1993); *In re Kaperonis,* 156 B.R. 736, 740 (Bankr.S.D.N.Y.1993). Several other Circuit Courts have followed the Eighth Circuit formulation in the *Long* case. *See In re Pasek,* 983 F.2d 1524, 1527 (10th Cir.1993); *Hartley,* 869 F.2d at 395; *Reynolds–Marshall v. Hallum,* 162 B.R. 51, 55 (D.Me.1993); *In re Whitner,* 179 B.R. 699, 702 (Bankr.E.D.Okl.1995); *cf. In re Held,* 734 F.2d 628, 630 (11th Cir.1984).

■ In *In re Stelluti,* 94 F.3d at 88, the Second Circuit concluded that malice may be constructive or implied. As the Second Circuit held, "Implied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *Id.; In re Stanley,* 66 F.3d 664, 668 (4th Cir.1995).

■ Following *In re Stelluti,* this Court finds that Rupert has failed to show that malice can even be implied by Krautheimer's conduct under the circumstances presented here. This does not mean that such evidence could not be adduced at a trial before this Court. It simply means that the granting of summary judgment was improvident insofar as there was insufficient evidence to support the aforementioned standards under Section 523(a)(6). As previously stated, breach of contract and other commercial conduct giving rise to civil liability, short of fraud, has not been regarded by Congress or the courts as warranting the drastic consequence of denial of discharge. Nor should the tort of inducing breach of contract, in the absence of facts showing such tortious behavior as to meet this statutory standard.

### B. *Collateral estoppel*

Until the passage of the Bankruptcy Reform Act in 1978, it was unclear whether either of the two relitigation bars—res judicata (claim preclusion) and collateral estoppel (issue preclusion)—applied to bankruptcy courts. Fundamentally, "the difference between res judicata and collateral estoppel is that res judicata forecloses all issues that could have been litigated previously, while 'collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.'" *In re Lucas,* 186 B.R. 67, 68 (Bankr.E.D.Va.1995) (quoting *Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10).

The Supreme Court answered the question regarding res judicata in the Brown case. The Court explained that res judicata does not apply to bankruptcy proceedings because its application in pre-bankruptcy suits "would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possi-

bility that a debtor might take bankruptcy in the future." *Id.* at 135, 99 S.Ct. at 2211. The Court wrote that "if a state court should expressly rule on [dischargeability] questions, then giving finality to those rulings would undercut Congress' intention to commit [dischargeability] issues to the jurisdiction of the bankruptcy court." *Id.* The Court concluded, "If, in the course of adjudicating a state-law question ... identical to those of [the dischargeability provisions of the Bankruptcy Law] then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the Bankruptcy Court." *Id.* at 139, 99 S.Ct. at 2213.

■ While res judicata was decided, the application of collateral estoppel was still unclear. In *Brown,* the Court's entire consideration of the issue was a footnote in which the Court said that while it was not "deciding" the issue, collateral estoppel would apply if the state law finding was "identical" to the required Bankruptcy Code finding. *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10. This question was formally answered in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), where the Supreme Court definitively held that collateral estoppel does apply to Section 523(a) matters. *Id.* at 284–285 n. 11, 111 S.Ct. at 658 n. 11. Thus, collateral estoppel is now firmly established in the bankruptcy court as applicable in dischargeability actions. But the circumstances would be limited, and the state and federal fact issues must be substantially "identical"

■ The premise underlying collateral estoppel is that once a specific issue has been determined in a prior proceeding by a court of competent jurisdiction, the parties and the court need not relitigate the issue in another suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979). Justice Harlan explained the policy behind the principle:

This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial

tribunals would not be invoked for the vindication of rights of person and property if, as between the parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*In re DEF Investments, Inc.,* 186 B.R. 671, 681 (Bankr.D.Minn.1995) (quoting *Southern Pac. R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27 42 L.Ed. 355 (1897)).

As a very general rule, courts in this circuit have stated that "the doctrine of collateral estoppel may only properly be applied to the facts underlying the judgment, and then, only upon the requisite showing." *In re Schwartz,* 36 B.R. 355, 357 (Bankr.E.D.N.Y. 1984) (citing *In re Sloan,* 18 B.R. 1021 (Bankr.E.D.N.Y.1982)); *accord In re Herman,* 6 B.R. 352 (S.D.N.Y.1980). Hence,

[a] jury's finding that a defendant's actions were willful and malicious will collaterally estop the judgment debtor from relitigating that issue in a subsequent dischargeability proceeding only if an examination of the record of the earlier proceeding satisfies the bankruptcy court....

*In re Dunn,* 95 B.R. 414, 417 (Bankr. N.D.Miss.1988) (citing *Combs v. Richardson,* 838 F.2d 112, 114 (4th Cir.1988)) Should the court determine that collateral estoppel not apply, then "[the plaintiff/defendant] is not estopped and must be given the opportunity to present evidence to the Bankruptcy Judge that [the debtor did/did not] willfully and maliciously cause injury to her." *In re Huber,* 171 B.R. 740, 749 (Bankr.W.D.N.Y.1994) (quoting *Spilman v. Harley,* 656 F.2d 224, 229 (6th Cir.1981)).

■ The doctrine of collateral estoppel requires a careful analysis of the issues litigated in the prior action. The doctrine is interpreted in the context of 28 U.S.C. § 1738, commonly known as the "full faith and credit" statute. In 1790, as one of its first acts, Congress passed section 1738 and it remains on the books "in essentially unchanged form." *In re Bicknell,* 118 B.R. 652, 658 (S.D.Ind.1990) (quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 n.

6, 102 S.Ct. 1883, 1889, n. 6, 72 L.Ed.2d 262, *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982)). It provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State." Therefore, in practice, the bankruptcy court must "refer to the preclusion law of the State in which the judgment was rendered" in order to determine whether collateral estoppel exists. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274, *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985).

The Court must apply New York preclusion rules to the case at bar. As one court confronting this dilemma wrote:

> The court could find nothing in Bankruptcy Code § 523 or in Congressional statements that would indicate that § 1738 should not be given its normal application in § 523 actions.... [Therefore, t]he remaining issue for us to determine in the instant case is what, if any, preclusive effect would [the state court] give to the ... judgment.

*In re Heuser,* 127 B.R. 895, 898 (Bankr. N.D.Fla.1991); *accord In re Staggs,* 178 B.R. 767, 780 (Bankr.N.D.Ind.1994), *aff'd* 177 B.R. 92 (N.D.Ind.1995). Based on this authority, the Court must now examine the elements and nuances of New York State's collateral estoppel jurisprudence.

In *Conte v. Justice,* the Second Circuit outlined the basic collateral estoppel doctrine as articulated in the New York Courts as a two-step test: (1) was the issue "necessarily decided" by the court, and (2) did the litigant have a "full and fair opportunity" to litigate the issue. As explained in *Conte:*

> Initially, the court must determine whether the issue sought to be litigated is identical to an issue necessarily decided in the prior action and decisive on the present action. *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 728 (1969). Upon satisfaction of the issue identity requirement, inquiry turns toward whether the party to be bound had a full and fair

opportunity to contest the determination now said to control. *Id.*

*Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993). The New York Court of Appeals has further explained that the movant must show that the issue was "necessarily decided," while the defendant has the burden to show a lack of "full and fair opportunity:"

> [W]e indicated that the burden rests on the defendant to show that collateral estoppel should not be applied because he did not have a full and fair opportunity, just as the burden of showing that the issue was identical and necessarily decided rests upon the moving party. This apportionment of the burdens is both fair and necessary. Otherwise much of the value of collateral estoppel will be lost.

*Schwartz,* 24 N.Y.2d at 73, 298 N.Y.S.2d at 962, 246 N.E.2d at 730 (internal citation omitted) To the same effect, *State of New York v. Sokol (In re Sokol),* 113 F.3d 303, 306 (2d Cir.1997) ("New York law provides that the party seeking the benefit of collateral estoppel ... has the burden of demonstrating the identity of the issues and the necessity of their having been decided, and the party opposing its use ... has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action," citing *Kaufman v. Eli Lilly and Co.,* 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985) and *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984)).

■ Despite these concrete policies, this Court recognizes that the "rules surrounding the application of collateral estoppel cannot be reduced to some simple black letter formula. Indeed, the New York Court of Appeals has stated that rigid or mechanical application of the doctrine runs counter to principles of due process." *Id.* Furthermore, it has said that "because the doctrine is based on general notions of fairness there are few immutable rules." *Boorman v. Deutsch,* 152 A.D.2d 48, 53, 547 N.Y.S.2d 18, 22 (1st Dep't 1989), *appeal dismissed* 76 N.Y.2d 889, 561 N.Y.S.2d 550, 562 N.E.2d 875 (1990) (quoting *Gilberg v. Barbieri,* 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 423 N.E.2d

807 (1981)); *State of New York v. Sokol (In re Sokol),* 113 F.3d at 306 (2d Cir.1997) ("the doctrine of collateral estoppel 'is grounded on concepts of fairness and should not be rigidly or mechanically applied' ", citing *D'Arata v. New York Central Mutual Fire Ins. Co.,* 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 26, 564 N.E.2d 634, 636 (1990)). Thus, the New York Court of Appeals wrote,

> In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.

*Staatsburg Water Co. v. Staatsburg Fire District,* 72 N.Y.2d 147, 153, 531 N.Y.S.2d 876, 878, 527 N.E.2d 754, 756 (1988) (citing *Gilberg,* 53 N.Y.2d at 291–292, 441 N.Y.S.2d at 49, 423 N.E.2d at 807). Based upon these policy considerations, this Court will examine below the two elements of collateral estoppel—identical issue necessarily decided and full and fair opportunity—separately. But for the purposes of this motion, further explanation of the parameters of these two elements as applied in New York is appropriate.

There is not much instruction from the New York State courts regarding the first element: whether an "identical" issue was "necessarily decided." Within the record of previous trials, New York courts conducting such analysis have focused on the trial transcript, jury instructions and the specific findings of the court or jury. *See Goldstein v. Consolidated Edison Co. of New York, Inc.,* 93 A.D.2d 589, 591, 462 N.Y.S.2d 646, 647 (1st Dep't 1983), *aff'd* 62 N.Y.2d 936, 479 N.Y.S.2d 213, 468 N.E.2d 51 (1984), *cert. denied,* 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985); *Safchik v. Board of Education of the City of New York,* 158 A.D.2d 277, 279, 550 N.Y.S.2d 679, 681 (1st Dep't 1990); *Dye v. Lincoln First Bank of Rochester,* 46 A.D.2d 172, 175–176, 361 N.Y.S.2d 449, 452–453 (4th Dep't 1974), *aff'd* 38 N.Y.2d 769, 381 N.Y.S.2d 228, 344 N.E.2d 57 (1975) (focusing on the prior judgment order itself); *Hines v. City of Buffalo,* 79 A.D.2d 218, 224, 436 N.Y.S.2d 512, 517–518 (4th Dep't 1981). In *Hines,* the court was doing the opposite analysis as this court—determining whether a Federal court necessarily determined an issue of relevance to a state court action. In assessing the difficulty of making such an analysis, the court explained:

> We have not had the benefit of the federal trial transcript, only the pleadings in the two actions, the judgment roll and pre-trial statement in the federal action have been submitted. These suggest that there may have been issues in that action actually decided by the jury which would operate dispositively against the plaintiff here. . . . However, this determination cannot properly be made without reviewing the federal court instructions, especially since there was a jury verdict without special findings and no opinion. We are unable therefore to determine (1) what issues were actually raised in the federal action, (2) which of these were necessarily decided by the jury and (3) which of the issues necessarily decided are identical to those now being raised. . . . Consequently this matter should be remitted for a hearing on the questions heretofore raised.

*Hines,* 79 A.D.2d at 224, 436 N.Y.S.2d at 517–518.

▮▮▮▮ Turning to the other leg of the collateral estoppel test, the New York courts have provided some guidance on the "full and fair opportunity to litigate" the issue. In order to determine whether a party had a full and fair opportunity to litigate, it is imperative to scrutinize the "various elements which make up the realities of litigation." *Schwartz,* 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729. The burden is upon the defendant to show that he did not have a full and fair opportunity to litigate. *Id.,* 24 N.Y.2d at 73, 298 N.Y.S.2d at 962, 246 N.E.2d at 730–731. To facilitate the consideration of the "realities of litigation," the Court of Appeals of New York has developed what one court called a "checklist to assist in this determination." *Anonymous,* 77 A.D.2d at 555, 430 N.Y.S.2d at 615.

Two cases have become the benchmarks on the issue.

*B.R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 148, 278 N.Y.S.2d 596, 601–602, 225 N.E.2d 195, 198–200 (1967) described the following considerations in deciding that the parties had a full and fair opportunity to litigate: whether (1) "the issues, as framed in the pleadings, were no broader and no different than those raised in the first lawsuit," (2) "the defendant offers [any] reason [to not hold] him to the determination," and (3) "it is unquestioned ... that the first action was defended with full vigor and opportunity to be heard." *Id.*

The second case, *Schwartz,* expanded and tightened the doctrine into the requisite factors for a "comprehensive list:"

> A comprehensive list ... would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.

*Id.,* 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729. However, the Court of Appeals has consistently counseled that this "checklist" should not be viewed as a rigid and inflexible catalog of all the factors to weigh:

> [W]e have consistently emphasized that these principles are not to be mechanically applied as a mere checklist. Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis. For example, the question whether a party had a full and fair opportunity to contest the prior decision is not answered simply by reference to the procedural benefits available in the first forum or by a conclusion that the requirements of due process were satisfied.

*Staatsburg,* 72 N.Y.2d at 153, 531 N.Y.S.2d at 878, 527 N.E.2d at 756.

## III. *Application of the law to the facts of this case*

### A. *Matters not at issue*

█ Before turning to the application of the facts in this case to the legal principles just summarized, it will be useful to make clear what is *not* at issue in this adversary proceeding. What is not at issue here is the validity and enforceability of Rupert's state court judgment against Krautheimer. Whether the state court judgment was right or wrong as a matter of fact or law, that judgment has been and will be accorded full faith and credit by this Court in Krautheimer's Chapter 7 case. This Court does not sit as an appellate court to review state court judgments, and Rupert's state court judgment is *res judicata* as between Rupert, Krautheimer and Krautheimer's Chapter 7 estate as to both liability and damages. Thus, Rupert will be entitled to full pro rata distribution on his claim based on his judgment.

What is at issue here is the dischargeability of the state court judgment under section 523(a)(6) of the Bankruptcy Code. Rupert's claim with regard to dischargeability based on section 523(a)(6) was not before the state court judge or jury, and such a claim can only be decided in this Court.

The questions to be resolved on this motion are whether the elements of a claim for non-dischargeability under section 523(a)(6) of the Bankruptcy Code were "necessarily decided" in the state court action, and if not, whether Krautheimer had a "full and fair opportunity to litigate" the Bankruptcy Code issues in the state court action.

### B. *The "identical issue necessarily decided" test*

█ As stated earlier, a bankruptcy court must scrutinize the entire record of the state court proceedings in order to determine whether collateral estoppel exists. *See Matter of Supple,* 14 B.R. 898, 904 (Bankr. D.Conn.1981). In this case, the record consists of pleadings filed in the state court, transcript excerpts of Krautheimer's pre-trial deposition and testimony in court, various documents, including the employment con-

tract and the termination letter to Rupert, and a transcript of the trial court's charge to the jury. The jury instructions, as the only and best way to truly deduce what the jury found in this case, were examined by this Court in detail. Upon reexamination, this Court concludes that there is a genuine issue of material fact regarding whether the jury found Krautheimer's actions to be "willful and malicious" within the meaning of the Bankruptcy Code.

When collateral estoppel is asserted, the plaintiff has the "burden of introducing a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Tobman,* 107 B.R. 20, 23 (S.D.N.Y.1989); *cf. Anonymous v. Anonymous,* 77 A.D.2d 554, 555, 430 N.Y.S.2d 613, 615 (1st Dep't 1980).

Rupert has failed to meet his burden in this case. The record here is simply not sufficient to warrant collateral estoppel effect or summary judgment on the section 523(a)(6) issues. It is important to note the obvious from the available record—that, with the exception of using the words "willful" and "malicious" in the state complaint, neither the pleadings, depositions or testimony in state court focused on the elements of section 523(a)(6). Nothing in the record demonstrates that an *intent to injure* or *malice towards* Rupert by Krautheimer was at issue in the depositions or state trial, despite the rhetoric in the state complaint. Therefore, as is amplified below, there are many unanswered questions and a multitude of findings that were possible by the jury that have nothing to do with the elements of section 523(a)(6).

The first question submitted to the jury concerned the alleged breach of the employment contract by the corporate defendant, R.W. Michael's Agency. The court, in its charge to the jury, explained that

> [t]he first cause of action and the first question involve a claim by the plaintiff, Mr. Rupert, against the Michaels Agency, Inc., which is a corporation; and the corporation is distinct from Mr. Krautheimer, who is personally the defendant in the second cause of action. Now, we know that a corporation can only act through its officers, employees, or other agents, but . . . keep in mind that in the first cause of action, we're dealing with a claim by the plaintiff against the corporation, and in the second cause of action by the plaintiff against Dr. Krautheimer personally.

The court went on to lay out the elements of a breach of contract, and explained that "just cause," as per the employment contract, would allow for legal termination of the contract without any liability to the Corporation.

The record indicates no pleadings, motions or other documents submitted by the Corporation itself, nor is it clear whether the Corporation had independent legal representation in the state court action. The trial court's instructions to the jury are confusing and lack clarity as to their procedural stance in the state trial. The only insight available to this Court as to the relationship of Krautheimer and the Corporation at trial is the instruction to the jury that they were to consider the two defendants "distinct." Thus, the finding of breach of contract by the Corporation has no bearing, in itself, on whether Krautheimer committed a "willful and malicious injury" upon Rupert. And, of course, breach of contract is not a basis for non-dischargeability in section 523(a)(6) actions. *See In re Kressner,* 206 B.R. 303, 311 (Bankr.S.D.N.Y.1997); *Matter of Martonak,* 67 B.R. at 730 (citing *Matter of Schwaninger,* 57 B.R. 553, 556 (Bankr.W.D.Mo.1986)).

The second count in Rupert's state court complaint was for tortious interference with contract. A thorough examination of the trial record fails to reveal any basis to conclude that the jury finding of tortious interference necessarily constituted a finding that Krautheimer committed a willful and malicious act as defined in the bankruptcy precedents.

The trial court, in general terms, charged the elements necessary for *prima facie* proof of *tortious interference* as follows:

> A person who, with knowledge of the existence of a contract, intentionally and improperly induces one of the parties to the contract to breach the contract is responsible to the other party for any damage he

suffers as a result of the fact that the contract had not been carried out.

\*    \*    \*    \*    \*    \*

The plaintiff in this case bears the burden of proof to establish the existence of a valid contract, knowledge of the contract on the part of the defendant, Dr. Krautheimer, the intentional inducement of the corporation to breach the contract and damages.

The court then gave the following explanation of burden *on the defendant,* including the basis for finding no tortious interference even if the *prima facie* case was established:

If the plaintiff has established these elements and acts inducing the breach of a contract would nevertheless not be improper if the defendant's conduct was reasonable, taking into consideration the relationship between him and the other parties to the contract and the interest which he sought to advance or protect, the defendant, Dr. Krautheimer, bears the burden of proof to establish that his action which induced the breach of contract was reasonable.

In this regard, when a defendant's interest is equal to or superior to that of the plaintiff, he is privileged, that is, he has the right to interfere with the plaintiff's rights, provided he does so by lawful means, and not for the sole purpose of injuring the plaintiff.

Thus, for example, the financial interest of a stockholder of a corporation or the fact that someone is a corporate officer may justify procuring the discharge of an employee who has a contract of employment with the corporation for a stated term.

Conversely, a person who acts outside the scope of their corporate authority for malice or for other motives of personal, as distinct from corporate, interests does not act with reasonable justification and would be personally liable for any interference with contract.

The question is not whether these instructions were correct under New York law, but whether they demonstrate that the jury "necessarily decided" that Krautheimer was guilty of "willful and malicious injury" to Rupert when the jury found Krautheimer liable for tortious interference. The answer to this question is clearly "no." The trial judge never charged the jury, in words or substance, that the jury must find that Krautheimer acted willfully and maliciously to injure Rupert in order to find Krautheimer liable for tortious interference, or that it was Rupert's burden to prove the malice element, or the nature of the willful element. The first paragraph above has nothing to do with the elements of section 523(a)(6). The remaining paragraphs are contextually quite different from section 523(a)(6) and gave the jury ample latitude to find Krautheimer liable without finding that he acted with willful and malicious intent to injure Rupert. Indeed, the only intimation of willfulness is found in the Justice's definition of "intentional" ("... done deliberately, with the purpose of interfering with the rights of the party to the contract ... ") and his explanation of how Krautheimer might withstand a *prima facie* case of tortious interference. Therefore, while the jury did find that Krautheimer was guilty of tortious interference, it cannot be said that they *necessarily decided* that he acted willfully and maliciously within the meaning of section 523(a)(6).

As for malice, the trial judge stated that a "person who acts outside the scope of their corporate authority for malice *or for other motives* ..." may be guilty of tortious interference (emphasis added). The use of the word "or" means that the jury did not "necessarily decide" that Krautheimer acted "maliciously." Clearly, the jury could have found that Krautheimer acted in any way, maliciously or otherwise, to find him guilty of tortious interference. This uncertainty alone is enough to deny collateral estoppel. *See In re Tobman, supra.*

Moreover, the jury instructions would have led the jury to believe that the burden was on Krautheimer to prove that he did not act with malice to overcome the *prima facie* case as charged—certainly there was no instruction that the burden was on Rupert to prove malice. Since the burden clearly is on Rupert to prove malice under section 523(a)(6), this discrepancy alone renders it impossible

to give collateral estoppel effect to the jury verdict.

This Court is precluded from drawing *inferences* from the record for summary judgment purposes. *Tobman* chastised the bankruptcy court for holding that "implicit ... in the record" was a finding of fraud under section 523(a)(2)(A), stating that "impressionistic characterizations of the jury verdict are not substitutes for compliance with the specific conditions required to invoke collateral estoppel in the Second Circuit." *Id.* Other courts in this district have been reticent to find summary judgment based on inference when the record is unclear. *See In re Katz,* 20 B.R. at 399 ("Conflicting inferences can be drawn from the facts ... so that it cannot be said that, as a matter of law, the Debtor's conduct was malicious.") Indeed, "the questions of willfulness and maliciousness must be decided on the basis of facts found at trial by the bankruptcy court." *Id.* (citing *In re Day,* 4 B.R. 750, 753 (S.D.Ohio 1980)).

Other courts, confronting similar problems as those in this record, have denied summary judgment to creditors. In *Supple,* after noting that the only reference to the concept of "willful and malicious" acts in a state action was the use of the phrase "willful conversion" by the state judge, the court explained,

> Although the state court judge may have intended the word willful to characterize conduct which under federal standards is both willful and malicious, nothing in the record makes this apparent. Without specific findings of fact from the state court, this court cannot conclude that the state court judgment was predicated upon a finding of willful and maliciousness injury [under § 523(a)(6) ]. Consequently, this court cannot ascertain whether the issue sought to be precluded here ... is identical to the issue which formed the basis for the judgment on stipulation entered in state court. It would be error, therefore, to give collateral estoppel effect to the state court judgment on the plaintiff's motion for summary judgment. . . .

*Matter of Supple,* 14 B.R. at 905.

██ In support of summary judgment, Rupert relied on the case *In re Hartman,* 100 B.R. 46 (D.C.Kan.1989) for the proposition that tortious interference, by its very nature, is nondischargeable under section 523(a)(6). This Court cannot rely on *Hartman* as precedent for two reasons. First, the elements of tortious interference under New York law are not synonymous with those of section 523(a)(6). Second, even if the elements were the same, the jury instructions in this case clearly were not. Moreover, the *Hartman* decision sheds little light on the facts in that case or the nature of the tortious interference by that debtor.

In *In re Kraft,* 192 B.R. 735 (Bankr. W.D.Mo.1996), a bankruptcy court considered the dischargeability of a debt arising from a Federal jury finding of "tortious interference with contractual relationships" and "misappropriation of trade secrets." *Id.* at 737. The court, analyzing the collateral estoppel effect of the judgment and applying the *Long* standard for malice, reviewed jury instructions for tortious interference outlining elements of the tort remarkably similar (although more detailed) to those outlined by the trial judge here. *Id.* The court denied summary judgment. The arguments made before it and the reasoning used to deny summary judgment are directly applicable to the case at hand:

> Plaintiff argued at the hearing that the fourth element of tortious interference ["That the defendant caused the breach or ending of the relationship intentionally and without justification or excuse"] requires the equivalent of a finding that the debtor's actions were willful and malicious. Plaintiff claims that debtor's conduct, which caused the breach of plaintiff's contractual relationship with third parties, was certain or almost certain to cause plaintiff financial harm. Therefore, under *Long,* plaintiff argues such conduct is malicious. Such reasoning, if adopted, would mean that actions of a debtor which may have the incidental effect of harming plaintiff would be considered malicious. [Applying the *Long* rule,] the jury must have found that debtor's conduct was motivated by an *"intent to cause injury"* to Plaintiff, *"rather than [being] merely an 'intentional act which causes injury.' "* *Long,* 774 F.2d at 880. Here, the fact that the jury

found that debtor, acting in her own self-interest, took steps which resulted in harm to plaintiff, does not necessarily mean that the jury also found that she acted with malice towards the plaintiff.

*In re Kraft,* 192 B.R. at 738 (emphasis added)

Another bankruptcy court in this Circuit refused to give collateral estoppel effect to a New York State default judgment of tortious interference. *In re Joseph,* 22 B.R. 319, 322 (Bankr.E.D.N.Y.1982). While basing its decision on the fact that a default judgment is not sufficient for collateral estoppel, it nevertheless found that the tort itself was not enough to warrant nondischargeability under section 523(a)(6). *Id.* The court explained that "fatal to the tort attempted to be alleged" by the creditor was that the defendant/debtor, as an "officer or director" of the corporation, is "not liable for inducing the corporation to breach the contract." *Id.* The court noted, "To hold [the defendant/debtor] liable in tort for the corporation's breach of contract, additional facts are required which are nowhere pleaded in the plaintiff's state court complaint, as, for example, that [the defendant/debtor] acted for his own benefit or outside the scope of his authority." *Id.* Therefore, the court held that the "pleading does not establish *prima facie* the tort of willful and malicious injury." *Id.* Like that creditor, Rupert, in his state complaint, was attempting to make a similar argument and did not allege either of the factors mentioned above.

### C. *Summary judgment*

◼ For purposes of clarity, we choose to restate and amplify these rules and policies. Bankruptcy Rule 7056 makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings in bankruptcy court. As a general rule, "proceedings involving discharge and dischargeability are not grist for summary judgment motions." *In re Jardula,* 122 B.R. 649, 653 (Bankr.E.D.N.Y.1990) (citing *Matter of Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984)). Nevertheless, "summary judgment has repeatedly been granted in such proceedings based on collateral estoppel." *Id.*

According to the rule, summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The concept of the "genuine issue of material fact" is nebulous, but was generally defined by the Supreme Court in *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986): a "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party;" a fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* at 248, 106 S.Ct. at 2510.

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). "A party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the non-moving party's case." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

The Court has a limited task in deciding a summary judgment motion. Fundamentally, the evidence and any derived inferences must be "viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). All doubts concerning the existence or nonexistence of a genuine issue of fact are to be resolved in favor of the party against whom the motion is sought. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Thus, "only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

◼ "[I]t is well settled that on a motion for summary judgment, the court is not em-

powered to 'try' issues of fact; it can only determine whether there are issues to be tried." *Kraftsman Container Corp. v. Finkelstein,* 461 F.Supp. 245, 249 (E.D.N.Y.1978) (citing *American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967)). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise. *Bryant,* 923 F.2d at 982. Hence, the non-moving party must come forward with significant probative evidence in support of its position. *See Capital Imaging v. Mohawk Valley Medical Associates,* 996 F.2d 537, 542, (2d Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

To summarize, Rupert has failed to sustain his burden of demonstrating within the high standard required for summary judgment that the state court jury "necessarily decided" that Krautheimer acted with willful and malicious intent to injure Rupert within the meaning of section 523(a)(6) of the Bankruptcy Code. The elements of a state law claim for tortious interference with contract have not been shown to be the same as the elements for a claim under section 523(a)(6) of the Bankruptcy Code.[4] Even if the elements were the same, the trial judge's instructions to the jury conflicted with section 523(a)(6) in material respects and, in addition, were sufficiently broad as to enable the jury to hold Krautheimer liable for the tort without the findings of fact necessary to support a claim of non-dischargeability as a matter of bankruptcy law. Nor has Rupert drawn this Court's attention to any evidence in the state court trial which would support the necessary findings under section 523(a)(6). That does not mean that such evidence could not be adduced in a trial before this Court. It simply means that the granting of summary judgment in this adversary proceeding based upon the jury instructions and trial record in the state court action was improvident.

### Conclusion

Krautheimer's motion to vacate the October 20, 1994 order is granted on the following grounds: 1) Krautheimer's motion was timely and properly made under Rule 60(b)(6) and 2) Rupert has not sustained his burden of demonstrating that the elements of a claim based on 11 U.S.C. § 523(a)(6) were "necessarily decided" by the jury verdict in the state court action.

As a consequence, both Krautheimer and Rupert will have a full and fair opportunity to litigate the issues under Section 523(a)(6) of the Bankruptcy Code at a trial in this adversary proceeding.

**4.** Since this Court has concluded that Rupert failed to show that the jury "necessarily decided" that Krautheimer acted with willful and malicious intent to injure Rupert under Section 523(a)(6), the judgment will not be given collateral estoppel effect. Consequently, it need not address the issue of whether Krautheimer had a "full and fair opportunity" to litigate the issue.